[Civ. No. 5929.   Fourth Dist.   Nov. 25, 1959.]

RAYMOND A. GLASSELL, Appellant, v. RAYMOND A.
PRENTISS et al., Respondents.

Wendell V. Harris for Appellant.

Surr & Hellyer for Respondents.

COUGHLIN, J. pro tem.*—This action arose out of an oral agreement entered into in November, 1954, between the plaintiff Glassell, as one party, the defendant Glen Ashurst, as

*Assigned by Chairman of Judicial Council.

a second party, and the defendant partnership, Chartier, Laufer and Prentiss, which was engaged in the painting business, as a third party. The pretrial conference order recites that the parties agree that they entered into an oral contract to form a business for installing walls in houses under construction; that the plaintiff would be field superintendent of the business at a salary of $200 per week; that the defendant Prentiss would be office manager at a salary of $25 per week; that the defendant Ashurst would do the estimating at $25 per week; and that all profits would be divided equally between the parties. Each party contributed $3,000 to the business. It appears from the undisputed evidence that the parties intended to form a corporation known as the "Consolidated Dry Wall Corporation." Forthwith, they undertook to form a corporation under that name; articles of incorporation were executed and filed, but no organizational meeting was conducted; no officers were elected; and no shares of stock were issued. Also forthwith, business operations commenced under the corporate name; contracts for the installation of dry walls in houses were entered into and performance thereof was commenced. The plaintiff acted as manager and was paid $200 a week. After the business had been in operation approximately two months, the defendants discovered that the cost of performance was exceeding the contract price payable to them by approximately $125 per house. Thereupon, the defendants caused further incorporation proceedings to be deferred. On March 25, 1955, culminating a series of discussions between the parties which commenced in January, 1955, concerning the inability of the business to make money, attempting to get the plaintiff to accept a smaller salary, and involving negotiations for the sale of the defendants' interest to the plaintiff, the defendants served a notice on the plaintiff that his services as field superintendent were terminated as of that date. The defendants proceeded to complete the work on contracts which had been commenced and which the business was obligated to finish; and assigned to other dry wall firms contracts upon which work had not been started. After all of the work in progress had been completed, and all other contractual obligations satisfied by assignment, the only remaining asset was a Willys Jeep pick-up truck, and the only outstanding liability was an indebtedness of $2,278 to the defendant paint partnership for advancements to complete the unfinished contracts, and to pay off the balance on the Willys Jeep. No further contracts were negotiated and the

business came to an end. After March 25, 1955, the plaintiff made no request to participate in the business; to assist in its winding up; or to examine its books and records.

The plaintiff brought this action to recover his share of the partnership assets as of March 25, 1955, as well as damages for breach of the alleged contract of employment and resultant loss of wages at the rate of $200 per week.

In his amended complaint "for partnership accounting and dissolution, damages for breach of contract, fraud, and non-payment of wages," the plaintiff alleged the existence of the foregoing oral agreement; his compliance therewith and breach by the defendants; that the business formed pursuant to the agreement was a partnership with assets worth $90,000 on March 25, 1955, in which he had a one-third interest; that he was discharged wrongfully; and that the defendant paint partnership fraudulently conducted the business with intent to fraudulently deprive him of his property.

The trial court, in substance, found the existence of the oral agreement; that the relationship created by it had been dissolved by the notice of March 25, 1955; that the defendants in good faith determined that because of loss of money the business should be liquidated and thereupon completed the contracts entered into by it for the installation of dry walls which were in the course of completion, and assigned other contracts which were not yet started; that "Certain accounts receivable were assigned as payment of accounts payable and all assets of the business were disposed of *except the Willys Jeep*"; that the "Liabilities of the business exceeded the assets in liquidation," and the defendant paint partnership advanced $2,278 in payment of obligations of the business; that the defendants at all times acted in good faith and there was no fraud; that the plaintiff was employed for an unspecified term; that his employment could be terminated at will, and was terminated on March 25, 1955. The court concluded that the plaintiff was the owner of a one-third interest in the Willys Jeep pick-up truck subject to his payment to the defendant paint partnership of one-third of the amount advanced by that partnership, and that he should recover nothing for wages or as damages. Judgment was entered accordingly and the plaintiff appeals.

In its findings the trial court stated that "Since the rights of third parties are not involved, the Court makes no finding as to whether or not the oral contract entered into in November 1954 constituted a partnership agreement, and further

makes no finding as to whether or not a partnership was thereby formed under the firm name . . . of Consolidated Dry Wall Corporation.''

With respect to the assets of the business on March 25, 1955, the day on which the plaintiff's alleged employment was terminated and after which he took no part in the business operation, the court found that, ''At said time said business had Accounts Receivable in the sum of $15,182.00 and Accounts Payable in the amount of $16,449.26, which Accounts Payable included the balance due on the Willis Jeep pick-up truck . . . which was purchased in November 1954 for $2,500.00, building materials of an approximate value of $3,000.00, building tools and equipment of an approximate value of $5000.00. In addition, the company was the holder of contracts to be performed in the total amount of $119,-643.00.'' The court also found as true an allegation in the defendants' answer that ''on March 25, 1955 Consolidated Dry Wall Corporation was an insolvent business and had no net worth.''

The plaintiff contends that, (1) the business was a partnership and the court erred in not so finding; (2) the partnership was not lawfully dissolved; (3) he was expelled from the partnership on March 25, 1955, and was entitled to the value of his interest as of that date; (4) his employment as field superintendent was coupled with an interest; was not subject to termination at the will of the parties; and that his discharge was wrongful; (5) that he was entitled to damages for breach of this contract of employment even though the amount thereof may have been difficult to determine; and (6) that the findings and conclusions of the trial court in conflict with these contentions were contrary to the law and the evidence.

The trial court, in a memorandum opinion, noted that the contentions with respect to whether the parties were operating as joint venturers, partners, a corporation de facto or a corporation de jure were largely academic, because no third party was involved. Accordingly no finding on the issue raised by the partnership allegations in the complaint was made.

Whether the parties, ''as among themselves, be termed partners, joint venturers, or co-promoters of a corporation . . . it is obvious that the trial court was justified in concluding that they stood on an equal footing as entrepreneurs.'' (*Holmberg* v. *Marsden*, 39 Cal.2d 592, 597 [248 P.2d 417].) The obligation imposed upon the parties as associates in the

business venture in question was fiduciary in character, and one in good faith with respect to the subject-matter of their agreement. (*Bellus* v. *Peters*, 165 Cal. 112 [130 P. 1186]; *Pacific Atlantic Wine, Inc.* v. *Duccini*, 111 Cal.App.2d 957 [245 P.2d 622]; *Morris* v. *Whittier Amusement Co.*, 123 Cal. App. 121 [10 P.2d 1017].) In this respect the obligation imposed upon them was similar to that imposed upon partners, joint venturers or copromoters of a corporation. The trial court determined that the defendants complied with this obligation in finding that a dispute arose between the parties as to whether the business was operated at a loss; that at all times the business was operated at a loss; that the defendants determined in good faith to liquidate the business because of its losses in the past; that the plaintiff was discharged as field superintendent because the business could not afford the salary payable to him under the agreement; that when the plaintiff ceased to act as field superintendent the defendants carried on the business to the best of their ability and discharged the obligations imposed upon it by previously executed contracts to install dry walls; and that in all ways the defendants acted in good faith, without fraud, and made no profit from the transaction. The parties had entered upon an undertaking which all of them hoped would be profitable but which had not met their hopes. There was substantial evidence to support these findings. ■ In this regard it must be remembered that, in reviewing the sufficiency of evidence to sustain findings of fact an appellate court must accept as true that testimony and the reasonable deductions which may be drawn therefrom which will support the findings, and reject as untrue that which is in conflict therewith. (*Thomas* v. *Hunt Manufacturing Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140, 142 [134 P. 1157].)

■ The plaintiff contends that he was expelled from the business which he alleges was a partnership, and that under the provisions of sections 15041, subdivision (6), and 15042 of the Corporations Code, he was entitled to the value of his partnership interest as of the date of such expulsion. He claims this interest was of much greater value than that found by the court. There is considerable doubt about the correctness of this claim in view of the alleged partnership's obligations under its incompleted contracts. The trial court found that the partnership was insolvent on the date in question. Nevertheless, assuming that the association of the parties

under the agreement in question constituted a partnership, as alleged by plaintiff, the court did not find that he was expelled therefrom, as contended by him. The fact is that the plaintiff was discharged as field superintendent but remained an associate or partner in the business. Because the plaintiff actually did not participate in the business after notice of March 25, 1955, does not mean that he was expelled from the business. Moreover, sections 15041, subdivision (6), and 15042 of the Corporations Code apply only to a partner who has been expelled when "the remaining partners continue the business . . . without liquidation of the partnership affairs." The defendants continued the business in question only for the purpose of liquidating its affairs. Consequently the plaintiff's contention that his interest should be determined as of March 25, 1955, is without merit.

The plaintiff also contends that the partnership was wrongfully dissolved by the defendants and that, for this reason, they should be held accountable to him for the value of his interest as of March 25, 1955. Still assuming that the association of these parties constituted a partnership, if the notice of March 25, 1955, and the defendants' conduct in relation thereto constituted a dissolution of the partnership, such dissolution was not wrongful, as contended by the plaintiff. Section 15031 of the Corporations Code provides that a dissolution of a partnership may be effected "without violation of the agreement between the partners . . . (b) By the express will of any partner when no definite term or particular undertaking is specified." The oral contract provided for an association of the parties for the purpose of conducting a business without relation to any period of time. If that association constituted a partnership it was a partnership at will. (*Clarke* v. *Fiedler*, 44 Cal.App.2d 838, 849 [113 P.2d 275]; *Peardon* v. *White*, 65 Cal.App. 463 [224 P. 263]; *Harris* v. *Hirschfeld*, 13 Cal.App.2d 204, 206 [56 P.2d 1252]; *Lyon* v. *MacQuarrie*, 46 Cal.App.2d 119 [115 P.2d 594]; *Fisher* v. *Fisher*, 83 Cal.App.2d 357 [188 P.2d 802].)

Upon dissolution, a partner has authority to wind up the partnership affairs and "complete transactions begun but not then finished." (Corp. Code, §§ 15033, 15037; *Ocean Acc. & Guar. Corp.* v. *Industrial Acc. Com.*, 104 Cal.App. 34 [285 P. 707]; *Stump* v. *Tipps*, 120 Cal.App.2d 418 [261 P.2d 315].) The duty of a liquidating partner is to wind up the affairs of the firm, pay its debts out of the assets, if sufficient, and divide the residue, if any, among those entitled to it.

(*Jay* v. *Clark,* 85 Cal.App.2d 88 [192 P.2d 462].)  The trial court found full compliance by the defendants with the foregoing obligations.  Contrary to the contention of the plaintiff, the defendants did not convert his interest in the property on March 25, 1955.

In settling accounts between partners after dissolution, the liabilities of the partnership to creditors first must be paid; secondly, the liabilities owing to partners other than for capital and profits, and thereafter the liabilities owing to partners in respect to capital and profits. (Corp. Code, § 15040.) If there is not sufficient partnership property to satisfy the liabilities, each partner must contribute his share toward such satisfaction, and any partner who contributes more than his share may recover from a defaulting partner the amount which was paid in excess of his liability.  (Corp. Code, § 15040.)  The plaintiff properly was chargeable with his share of the liabilities of the partnership including the amount advanced by the defendant paint partnership.

The plaintiff also contends that, under any circumstances, by virtue of the provisions of section 15043 of the Corporations Code he was entitled to the value of his interest in the partnership as of the date of dissolution, i.e., March 25, 1955.  He misinterprets that section which provides merely that the right of a partner to an account of his interest as against a winding up partner shall accrue at the date of dissolution, and not the right to have the value of his interest determined as of that date.  For example, the statute of limitations against an action for such an account would commence to run from this date.  (*Shearer* v. *Davis,* 67 Cal.App. 2d 878, 881 [155 P.2d 708].)

The remaining questions on this appeal concern plaintiff's contention that he was wrongfully discharged as field superintendent.

The agreement in question provided that a business would be formed and that plaintiff would be the field manager of that business at a salary of $200 per week. The plaintiff contends that this agreement conferred upon him the right to act as field superintendent and to be compensated therefor in addition to his share of the profits.  The agreement so provides.  However, the agreement does not fix any period of time during which he should act as field superintendent.  As a consequence, when he ceased to act as field superintendent on March 25, 1955, his right to compensation therefor also ceased. The situation is analogous to employment for an unspecified term which "is terminable at the will of either party except

where the employment is coupled with an interest or is entered into upon an independent consideration, in either of which events it is terminable only after a reasonable time." (*Carpenter Paper Co.* v. *Kellogg,* 114 Cal.App.2d 640, 652 [251 P.2d 40].) The plaintiff claims that the agreement under consideration created "an agency protected by a co-existing interest in the subject-matter purchased by appellant for $3,000," and also was a part of the consideration inducing him to enter into the contract. In support of this contention he cites *Barry* v. *Barton,* 189 Cal. 183 [207 P. 902], which involved an agreement for the formation of a partnership and the employment of plaintiff as one of the prospective partners, but which is not in point, because the contract of employment there being considered was for a definite two-year term which had not expired at the time of discharge. Plaintiff also cites *Brown* v. *National Electric Works,* 168 Cal. 336 [143 P. 606], where the plaintiff paid the defendant $5,000 pursuant to a contract under which the defendant agreed to sell plaintiff certain shares of its stock and to employ him in its business, in consideration of which the plaintiff agreed to purchase the stock and to enter upon such employment, and where the court held that there was "an implied agreement to continue the employment for a reasonable time" because the agreement to employ was a material part of the consideration for which the defendant paid $5,000. Whether the provision that plaintiff would be field superintendent was a material part of the consideration for his promise to advance $3,000 and to participate in the formation of a business was a question of fact for determination by the trial court, incident to its determination respecting the nature and terms of the oral agreement. The court found that the plaintiff advanced $3,000 to the business, and that this advance constituted a loan to the corporation which was to be cancelled on the issuance of stock.

The conclusion of the trial court that plaintiff was employed as field superintendent for an unspecified term and was not entitled to a salary after March 25, 1955, is supported by evidence from which it may be inferred that the agreement that he would act as field superintendent was not a part of the consideration for his becoming a party to the formation of the business and his payment of the $3,000. The pretrial conference order in this case, in setting forth plaintiff's contentions, stated, ". . . that plaintiff, by the agreement under which the business was organized, was entitled to a *job* at $200 per week, and that he was fired by defendants without

cause; that plaintiff contributed $3,000 cash to the business for which he never received any consideration . . . claims agency coupled with an interest." At the trial, when certain corrections in the pretrial order were being considered, the attorney for plaintiff said, "and then, down starting at line 6, '. . . that plaintiff contributed $3,000 cash to the business for which he never received any consideration . . .' that isn't our claim, Your Honor. We don't deny that we received consideration. The consideration was, of course, *a third ownership in the business* and we do not make that claim." (Italics ours.) The contention was not then made that the promise of a "job" was a part of the consideration for the $3,000. The defendant Prentiss testified that there was no discussion between the parties as to whether the plaintiff would put up the $3,000 if he did not have the job of field superintendent. On January 26, 1955, when the defendants asked the plaintiff to cut his salary to $125 per week, the discussion became heated. The next morning, the plaintiff told Prentiss that he was getting his last check; that he was going to quit because Prentiss didn't want him. At this time the plaintiff was not contending that he had a right to remain employed under the terms of his contract. He did continue with his employment, however, upon an apology from Prentiss. It is noteworthy that the defendant Ashurst agreed to advance $3,000 even though his job paid only $25 per week and, although Prentiss individually was to be employed at $25 per week, the defendant paint partnership, of which he was a copartner, as such, was not employed by the business but it, nevertheless, agreed to advance $3,000. The trial court was entitled to infer from the circumstances that each of the parties agreed to advance $3,000 toward the business irrespective of their individual employment at a specific salary.

Moreover, if it be assumed that the agreement that plaintiff would act as field superintendent at $200 per week was a part of the consideration for his promise to participate in the formation of the business and advance the sum of $3,000, the term of employment implied by law, there being no express term stated, would be for a reasonable time. (*Brown* v. *National Electric Works*, 168 Cal. 336, 338 [143 P. 606].) The finding of the trial court that he was "entitled to no salary or wages" after March 25, 1955, is supported by evidence from which it can be concluded that on this date, he had been employed for a reasonable time. The plaintiff advanced $3,000 to the business; he was paid from the business as wages

$3,800; the business was operating at a loss; his continued employment would have resulted in a greater loss; and his services were not of the nature contemplated at the time the agreement was made, because he did not participate in doing any of the installation work but limited his activity to supervision.

Furthermore, assuming, as plaintiff contends, that the law governing partnerships applies to this transaction, the plaintiff, as a partner, would not be entitled to any compensation above his share of the profits for acting as field superintendent, in the absence of an existing agreement so providing. (*Vangel v. Vangel,* 116 Cal.App.2d 615 [254 P.2d 919].) Although the provision in the oral contract that he should be paid $200 per week for such services constituted such an agreement, it would exist only until dissolution of the partnership. As the partnership was terminable at will, so also the agreement for additional compensation for special services was terminable at will. Consequently, when the alleged partnership was dissolved on March 25, 1955, the plaintiff's right to receive more than his share of the profits ceased. Moreover, the plaintiff's position with the partnership, being a partner assigned special duties for which he was to receive additional compensation, was subject to partnership control. There was no provision in the oral contract to the contrary. The partnership, of which he was a member, having determined that he no longer should act as field superintendent, was not required to pay him compensation he would have been paid if he had continued to act as such field superintendent. Section 15018 of the Corporations Code provides that "Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all partners." The defendants, as a majority of the partners, terminated the plaintiff's position as field superintendent. This action related to an ordinary matter connected with the partnership business and was not in contravention of the agreement between the partners because by that agreement this position, not being for a specified term, was subject to termination at will.

The plaintiff participated in a venture which proved to be unsuccessful. The defendants, in an attempt to prevent a loss greater than their investment, in good faith brought the venture to a close. The judgment of the trial court that the plain-

tiff is not entitled to more than his share of the remaining assets, subject to the remaining liabilities, was proper.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied December 22, 1959, and appellant's petition for a hearing by the Supreme Court was denied January 20, 1960.