[Civ. No. 26159. Second Dist., Div. Four. May 8, 1962.]

FRANK J. DRDLIK, Plaintiff and Appellant, v. JACK ULRICH et al., Defendants and Respondents.

Albert A. Dorn for Plaintiff and Appellant.

Earl Klein for Defendants and Respondents.

BURKE, P. J.—This is an appeal from a judgment of non-suit entered against plaintiff in a nonjury trial. The parties' joint pretrial statement relates that: shortly prior to June 21, 1956, plaintiff, defendants and Elliot Robinson orally agreed they would form a corporation for the purpose of constructing two residences on two hillside lots then owned by defendants; after completion the residences were to be sold and the profits divided 40 per cent to defendants, 30 per cent to Robinson and 30 per cent to plaintiff; the two lots were to be transferred to the corporation for a total consideration of $7,500 which was to be paid to defendants out of the proceeds of a sale of the houses; defendants were to advance all funds necessary in connection with the project; plaintiff was to supervise the construction; Robinson was to work out the financing and related problems; and defendants were to keep all of the books and records in connection with the project.

The joint pretrial statement further provided: in accordance with their understanding the corporation was formed, under the name of Starling Homes, Inc., with the three parties acting as incorporators and officers; in accordance with a permit from the Corporation Commissioner stock in the corporation was issued on July 23, 1956, with four shares going to defendant Jack Ulrich, three shares to plaintiff and three shares to Robinson; deeds transferring the two lots from defendants to the corporation were never recorded; residences were constructed on the lots and the properties were ultimately sold by defendants, one on or about January 16, 1959, and the other in November of 1960; the proceeds from such sales were retained by defendants; plaintiff supervised the construction of the residences and also did various jobs on the project outside the scope of his supervisory duties; he received nothing by way of compensation from defendants in

connection with his services; and plaintiff received a total of $842.42 as personal loans from defendants.

In his first cause of action plaintiff sought to recover the reasonable value of work, labor and services alleged to have been rendered on behalf of defendants. In a second cause of action he sought recovery for the same sum of money on the theory of money had and received. Defendants denied all of these allegations and set up a counterclaim for the loans made to plaintiff in the amount indicated.

The evidence received at the trial followed very closely the statement of facts agreed upon in the joint pretrial statement. From the testimony of plaintiff, defendant Jack Ulrich and Robinson, it became apparent that the project involved the construction of two houses designed by plaintiff on hillside lots and that in the course of construction unforeseen difficulties were encountered with the costs of the projects exceeding those which had been anticipated.

Plaintiff testified that he spent 232 hours supervising the construction of the residences and, computed at five dollars an hour, $1,160 was the reasonable value of such services. In addition, he testified he spent 1,161 hours on the job as a laborer for which he claimed he should receive payment at $2.50 an hour. He further testified that when the residences were substantially completed, lacking only an expenditure of, roughly, $350, defendants refused to supply the balance of the money necessary to complete the work and he left the project. He stated it had been unknown to him that deeds to the property had never been recorded transferring title from defendants to the corporation and that the sale of the property by defendants was made without his knowledge or consent. He stated the work he rendered as a laborer was outside the scope of supervision and that he did this work with the expectation of being compensated.

Defendant Jack Ulrich, called by plaintiff under Code of Civil Procedure section 2055, testified that plaintiff did a substantial amount of physical labor on the job. He asserted that although the original agreement had been to deed the lots to the corporation this had been changed by agreement of the parties. The building permits for the homes were taken out in the name of the corporation. The loans were actually taken out in the name of defendant Ulrich and his wife. Defendant Ulrich asserted he had authority from plaintiff and Robinson to sign a listing agreement for the sale of the houses and that he had discussed the value of the houses with them and had

their approval to sell at the prices for which they were sold. He further testified he had made no profit on the venture. He said that he had also done laboring work on the projects.

Elliot Robinson was called as a witness for plaintiff. He stated he had talked to the Sutro Company regarding finances and that plaintiff, defendants and he had signed the loan escrow.

Defendants made a motion for nonsuit on the ground plaintiff could not recover on the first cause of action because he was a joint adventurer and without an express agreement he could not recover for his services; nor on the second cause of action because one joint adventurer cannot sue another for money had and received without first obtaining an accounting. The court granted the motion for nonsuit.

On appeal plaintiff contends: (1) the court should have denied the motion for nonsuit; (2) plaintiff was entitled to recover for all services under the theory of unjust enrichment; (3) assuming the trial court was justified in concluding that plaintiff's only remedy was to request a dissolution of the joint venture and for an accounting, it was error to grant the motion for nonsuit without an accounting; and, (4) the statute of limitations did not bar any part of plaintiff's claims.

As was stated in *Sunset Milling & Grain Co.* v. *Anderson,* 39 Cal.2d 773, 779 [249 P.2d 24], " 'A trial court must deny a motion for a nonsuit at the close of plaintiff's case "if there is . . . any substantial evidence, which, with the aid of all legitimate inferences favorable to the plaintiff, tends to establish the averments of the complaint, or, in other words, where the plaintiff's evidence is sufficient to support a judgment on the verdict. . . ." And as to our duty, "The uniform rule which an appellate court should follow in disposing of an appeal from a judgment of nonsuit is, that the court must view the evidence in the light most favorable to appellant, must disregard all inconsistencies and draw only those inferences from the evidence which can reasonably be drawn which are favorable to appellant. . . ." ' [Citing cases.] "

There can be no doubt under the facts stipulated to and under the evidence produced at the trial that these parties agreed to and did in fact enter into a joint venture agreement for the construction and sale of the houses in question. Under such circumstances the granting of the nonsuit by the court was entirely proper. The elements of a joint venture are set forth in *Stilwell* v. *Trutanich,* 178 Cal.App.2d

614, 618-619 [3 Cal.Rptr. 285]. ▮ It is clear that a community of interest, which is one of the basic elements, may exist although the property forming the capital of the venture is not jointly owned by the parties and although one of the parties has contributed money and property and the others labor and skill.

▮ The fact that there is to be an unequal distribution of the profits likewise does not contravene the idea of a joint venture. ▮ This is also true of the actual control of operations. ▮ It is also clear that an agreement to set up a joint venture requires little formality and need not be in writing. (*Epstein* v. *Stahl*, 176 Cal.App.2d 53, 57 [1 Cal.Rptr. 143].) ▮ Even though a corporation may be used as the instrumentality or agency in carrying out the joint venture the courts will disregard the corporate form and enforce the joint venture agreement. (*Hillman* v. *Hillman Land Co.*, 81 Cal.App.2d 174, 184 [183 P.2d 730].)

▮ It is apparent that in the case before us plaintiff seeks to disregard the basic joint venture agreement between the parties and to convert their understanding into an employer-employee relationship. Plaintiff seeks to recover under the theory of unjust enrichment, asserting that since the corporate device was in fact never utilized the result was that plaintiff was working for defendants. Plaintiff cites *Lazzarevich* v. *Lazzarevich*, 88 Cal.App.2d 708 [200 P.2d 49], and *Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376 [89 P. 86], as authority for his assertion that where one person performs services for another the law raises an implied promise to pay a reasonable compensation therefor. The first case involves services rendered a man by a woman believing in good faith that she is validly married to him, and in the second case the rendering of services by one to another at the latter's request from which the law implies a promise to pay the reasonable value. Neither case is of assistance to the plaintiff under the admitted facts where clearly there was a joint venture and the law governing such a relationship of the parties is applicable. ▮ The principle that in the absence of the termination of a joint venture and a final settlement of its affairs, one joint adventurer may not maintain an action to recover an amount allegedly due him by reason of the joint venture agreement is well established based on the following pertinent rules of law as stated in *Cunningham* v. *de Mordaigle*, 82 Cal.App.2d 620, 621-622 [186 P.2d 423]:

"First: The rights and liabilities of joint venturers as between themselves are governed by the same rules as those which apply to partnerships. [Citing cases.]

"Second: Partners cannot sue one another at law in respect to any of the business of the partnership or to recover damages from one or the other of the copartners for a breach of a partnership agreement. The remedy is by a suit in equity for a dissolution of the partnership and an accounting and settlement of the partnership affairs. [Citing cases.]

". . . The reason for this rule is that until an accounting is had it cannot be known whether the joint venturer suing may not in fact be indebted to the joint venture, or to the other members of the venture, or that there may not be outstanding joint venture debts sufficient to exhaust the joint venture assets."

The fact that a joint venture fails and there are losses rather than profits does not entitle one joint adventurer to sue another for services rendered in the joint venture. In *Parker* v. *Trefry,* 58 Cal.App.2d 69, 74-76 [136 P.2d 55], under circumstances quite similar to the case at hand the joint adventurers encountered a loss instead of a profit. The contractor sued for his building expenses and for services as superintendent. The defendant alleged the existence of a partnership agreement and asked for a share of his losses. The plaintiff contractor received judgment and that judgment was reversed on appeal. In its decision the court pointed out the relationship was one of joint adventurers, quoting *Spier* v. *Lang,* 4 Cal.2d 711 [53 P.2d 138]:

" '. . . an agreement between the owner of lots and a building contractor for the construction of houses on the lots, and a division of the profits from the sale of the houses, gives rise to the relationship of joint adventurers, rather than that of master and servant or of independent contractor, where it discloses an intent that both parties shall contribute to the enterprise, exercise control over it, and be accountable to each other for their acts in carrying it out. [Citing cases.]' "

The court further stated at page 76: ". . . the fact that it [the joint venture] resulted in a loss rather than in a profit is not sufficient to change the character of the transaction from that of a joint adventure to one of employer and employee or of independent contractor."

Similarly in *Kovacik* v. *Reed,* 49 Cal.2d 166 [315 P.2d 314], a contractor supplied skill and labor in the doing of certain remodeling work and the plaintiff supplied the money. The

venture ended in a loss and the plaintiff sought to have the defendant contractor share the money loss. The court stated (pp. 169-170):

"Where . . . one partner or joint adventurer contributes the money capital as against the other's skill and labor, all the cases cited, and which our research has discovered, hold that neither party is liable to the other for contribution for any loss sustained. Thus, upon loss of the money the party who contributed it is not entitled to recover any part of it from the party who contributed only services. [Citing cases.] The rationale of this rule . . . is that where one party contributes money and the other contributes services, then in the event of a loss each would lose his own capital—the one his money and the other his labor."

 Applying the reasoning of the last mentioned case to the factual situation in the case before us it is clear that plaintiff cannot maintain his action to ask defendants to share his loss since they were different in kind and there was no agreement to the contrary. By the same token, defendants cannot sue plaintiff to recover their monetary loss.

 Plaintiff's contention that it was error for the trial court to grant the motion for nonsuit without an accounting is without merit. Plaintiff foreclosed the trial court from considering an accounting by his own action. In the argument on the motion for nonsuit plaintiff's counsel stated, "There is no necessity for an accounting. . . ." Plaintiff cannot claim for the first time on appeal a remedy which he specifically rejected in the trial court. (*Ernst* v. *Searle,* 218 Cal. 233 [22 P.2d 715].)

It is not necessary to the disposition of this appeal to discuss the statute of limitations issue raised by plaintiff.

Judgment affirmed.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied May 29, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 3, 1962.