Joe **ADELMAN**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 68–1315.

United States District Court
C. D. California.

Sept. 26, 1969.

Eli Grubic, Reno, Nev., Ben H. Rudnick, Behrstock & Rudnick, Los Angeles, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., U. S. Atty., by Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., Edward O. C. Ord, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

The plaintiff seeks recovery of wagering excise taxes collected under the Internal Revenue Code of 1954, § 4401 (26 U.S.C. § 4401) for the period January 1, 1958, through September 30, 1958, in the amount of $10,000.00, plus assessed interest of $3,491.00 for a total of $13,491.00.

The Government has moved under Rule 56(b) and (c) of the Federal Rules of Civil Procedure, for an order granting summary judgment in its favor. After considering the pleadings, memoranda and supporting affidavits submitted by both parties and after hearing oral argument, the court has concluded that the motion must be granted.

During the period in question, the plaintiff was a limited partner in a three-man limited partnership engaged in the operation of a horse and sports wagering business in Reno, Nevada. The partnership was operated from October 15, 1956, until its termination on Septemmber 30, 1958, when the plaintiff and the other limited partner each received a distribution of $10,000.00, the amount of their respective original contributions to the partnership. A later audit and examination of the partnership's federal wagering tax return for the period January 1, 1957, through September 30, 1958, disclosed that there were unpaid wagering taxes due in the amount of $71,802.70, as of the date of distribution. The addition of this unpaid tax liability to the figures revealed in the final partnership tax return (assets—$23,329.13; liabilities—$4,879.18) shows that the partnership was insolvent on the dissolution date.

On February 15, 1963, an assessment of $71,802.70 in wagering tax, plus a statutory fraud penalty of $35,901.38, plus interest of $20,729.83, for a total of $128,433.91, was made against the three partners, d/b/a Reno Turf Club. After failing in repeated efforts to collect the

amount due from the general partner, Herman Byrens, the Internal Revenue Service collected by levy the amount involved in this suit from the plaintiff, who thereafter filed a timely claim for refund.

The plaintiff's asserted liability is based upon the transferee provisions of the Internal Revenue Code of 1954, which provide that a transferee is liable for the taxes of the partnership-transferor where he receives property upon the liquidation of the partnership. Int. Rev.Code of 1954, § 6901(a) (2), (b) (26 U.S.C. § 6901(a) (2), (b)); Treas.Reg. § 301.6901–(a) (2) (1954). Other than the statute of limitations, there is no question that the elements of transferee liability are present here. There was a transfer of assets by the partnership and the plaintiff was the transferee of those assets. He received his $10,000.00 dis-

tribution upon the termination of the partnership and the sum was transferred in the form of a check drawn on the partnership account. The transfer was accomplished after the period during which the liability in question accrued. Furthermore, after the transfer the partnership ceased to exist and was left insolvent. See J. Mertens, Law of Federal Income Taxation, § 53.06 (1965 rev.).

The major question raised by the Government's motion for summary judgment is whether the assessment by the Internal Revenue Service was barred by the statute of limitations. The Government relies on a series of waivers consenting to the extension of the period of limitations upon assessment of excise taxes, which were executed on behalf of the partnership by Mr. Byrens, as follows:

| Period | Assessment Date Extended To | Date Submitted |
|---|---|---|
| January – March 1958 | June 30, 1962 | January 3, 1961 |
| July – September 1958 | June 30, 1962 | August 3, 1961 |
| January – September 1958 | June 30, 1963 | February 5, 1962 |

The Government claims that these waivers validly extended the statute of limitations for the partnership and therefore also extended it for the plaintiff-transferee under Int.Rev.Code of 1954, § 6901 (c) (26 U.S.C. § 6901(c)). That section provides that an assessment can be made against a transferee within one year after the expiration of the period of limitations for assessment against the transferor. The transferor's period has been held to mean the original period of limitations as properly extended by consents. Rite-Way Products, Inc. v. Commissioner, 12 T.C. 475, 479 (1949); Denton v. Commissioner, 21 T.C. 295, 301 (1953). If the Government's analysis is correct then its motion for summary judgment must be granted, since the assessment was made on February 15, 1963, prior to the June 30, 1964, extension date applicable to the plaintiff-transferee under Int.

Rev.Code of 1954, § 6901(c) (26 U.S.C. § 6901(c)).

The plaintiff, on the other hand, contends that since the consents were executed by the general partner after the dissolution of the partnership they are invalid and not binding on the partnership. He then argues that neither the partnership nor the plaintiff as its transferee could be liable because the assessment was made on February 15, 1963, after the normal three-year statute of limitations applicable to the partnership had run (Int.Rev.Code of 1954, § 6501 (a)).

The resolution of this case, therefore, turns upon the question of whether Byrens possessed the authority to bind the partnership in these circumstances by executing the consents extending the statute of limitations.

■ Generally, the dissolution of a partnership operates to revoke the power of the partners to create new contracts; however, the authority to settle already existing partnership concerns and to wind up its affairs continues. E. g., Bell v. Morrison, 26 U.S. 351, 370–371, 1 Pet. 351, 7 L.Ed. 174, 183 (1828); Cotten v. Perishable Air Conditioners, 18 Cal.2d 575, 577, 116 P.2d 603, 605, 136 A.L.R. 1068, 1070 (1941). The Uniform Partnership Act, as adopted by the state of Nevada, is to the same effect. Nev.Rev. Stat. §§ 87.300 & 87.330.

■ The authority of a partner to bind the partnership after the dissolution is stated in Nev.Rev.Stat. § 87.350.

"(1) After dissolution a partner can bind the partnership except as provided in subsection 3:

"(a) By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution; * * *."

Subsection three of that section, which provides that the partnership is not bound by the act of a partner "[w]here the partner has no authority to wind up partnership affairs; * * *.", is inapplicable in this situation, because Byrens, as the only remaining member of the partnership, necessarily had authority to wind up the partnership affairs.

■■ The execution of the consents in these circumstances were acts "appropriate for winding up partnership affairs or completing transactions unfinished at dissolution" and therefore were binding upon the partnership. Since the debt was valid and subsisting at the time the consents were executed, the only effect of the consents was to postpone the time when the tax would be assessed. A partner involved in the winding up of partnership affairs has authority to pay partnership debts, Glassell v. Prentiss, 175 Cal.App.2d 599, 605–606, 346 P.2d 895, 901 (4th Dist.1959), and he has the corresponding authority to adjust the time of payment. The Internal Revenue Service, by obtaining these consents, only gained more time in which to collect an existing debt; and it is reasonable to assume that the Government's delay in making the assessment was due in part to the existence of these consents. This is not a situation where a partner attempts to revive a debt already barred.

The plaintiff's reliance upon the rule of Bell v. Morrison, 26 U.S. 351, 1 Pet. 351, 7 L.Ed. 174 (1828)—that a partner has no power, after dissolution of the partnership, to take a cause out of the statute of limitations as to his former partners—is misplaced. That case dealt with a situation where the statute of limitations had already run against the debt when the purported waiver was made. The opinion stated:

"The question is not, however, as to the authority of a partner after the dissolution to adjust an admitted and subsisting debt; we mean admitted by the whole partnership or unbarred by the statute; but whether he can, by his sole act, *after the action is barred by lapse of time,* revive it against all the partners, without any new authority communicated to him for this purpose." 26 U.S. at 371, 7 L.Ed. at 183 (emphasis added).

In those circumstances, taking a cause of action out of the statute of limitations is in effect to create a new contract, an act which a partner after dissolution clearly may not do. Pottash Bros. v. Burnet, 60 App.D.C. 167, 50 F.2d 317 (1931).

Byrens' authority to extend the statute of limitations on behalf of the partnership having been established, the plaintiff's liability for the taxes here in question is also established. The assessment was made before the expiration of the extended period of assessment applicable to the partnership-transferor and also before the expiration of the special statute of limitations applicable to the plaintiff-transferee by Int.Rev.Code of 1954, § 6901(c). It therefore was not barred by the statute of limitations.

Accordingly, summary judgment will be entered in favor of the defendant and its costs will be allowed against the plaintiff.