[Civ. No. 25562. First Dist., Div. Two. Aug. 31, 1970.]

M. NAKASHIMA, Plaintiff and Respondent, v.
A. BERNARD MUTH et al., Defendants and Appellants.

## Counsel

MacDonald, Brunsell & Walters and Thomas E. Caton for Defendants and Appellants.

Elliot W. Seymour and Liebermann & Leonard for Plaintiff and Respondent.

## Opinion

**DAVID, J.**[*]—Defendants appeal from plaintiff's judgment on a $60,000 promissory note. Due execution, delivery and nonpayment were admitted; but it is contended that both the note and the transaction in which it was given were void, violating Corporations Code sections 26100 and 26103 prohibiting the sale of any corporate security without the permit of the Corporations Commissioner. The trial court found that the permit requirement was inapplicable, under the exceptions of Corporations Code section 25152, subdivision (a) (repealed, 1968, now covered by § 25104, subd. (a)). This conclusion was amply supported by the evidence, and the law, including further applicable sections 25100, subdivision (m), and 25102, subdivision (c). The judgment therefore will be affirmed.

In 1958 or 1959, three promoters caused the Lake Alhambra Development Corporation to be formed (called "Alhambra" herein). Plaintiff Nakashima and his wife conveyed an Antioch subdivision to the corporation, for which they were to receive 70 percent of the stock, each of the promoters having 10 percent. Although formally incorporated, Alhambra never applied for a permit to issue stock, nor did it. It perhaps is not unusual for corporate venturers to claim the benefits of limited liability and tax advantages, without completing the corporate procedure. In September 1960, Nakashima was the president of Alhambra; and was also president of the Houston Land and Development Corporation. Its function was building homes on the Alhambra subdivision. Defendant Muth was the vice-president of Houston, and as a building contractor was building the homes.

Alhambra borrowed $60,000 on its note from the Sumitomo Bank in San Francisco, and plaintiff Mitsuteru Nakashima and his wife Mikiye Nakashima guaranteed the note.

The note upon which judgment was given herein was made jointly by defendant Muth and Alhambra, payable to Nakashima.

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

So far as the corporation was concerned, neither note was invalid. Corporations Code section 25102, subdivision (c), provided that the Corporate Securities Law does not apply to "Promissory notes, whether secured or unsecured, and any guarantee thereof, where the notes are not offered to the public, or are not sold to an underwriter for the purpose of resale." We are not concerned here with the more inclusive definitions of section 25018 as amended in 1968. (Cf. *People* v. *Davenport* (1939) 13 Cal.2d 681 [91 P.2d 892].)

In one of a series of transactions in which defendant Muth acquired all interests in Alhambra, Nakashimas agreed by a contract dated September 23, 1960, "to sell all our right, title and interest in the above-named corporation" to Muth. Performing one condition of the contract, Muth paid off the corporate note at the San Francisco Sumitomo Bank, thereby discharging the Nakashimas as guarantors. Another term of the contract was the execution and delivery of the $60,000 note here in question, signed by Muth and also Alhambra. Upon their default upon the note, this lawsuit and judgment for Nakashima followed.

The sole issue for trial under the pretrial order, filed June 7, 1967, was "Whether or not this transaction violated the Corporation Securities Act of the State of California so as to render *this* transaction unlawful and unenforceable" (italics added). The argument is, that the sale of Nakashimas' interest to Muth was void, constituting the sale of a "security" as defined by Corporations Code section 25130, without a permit. The trial court found Muth at all times was familiar with Alhambra, that he knew no permit had been secured to sell stock, and that none had been issued.

The facts disclose, and the trial court held, that this sale by Nakashimas, bona fide owners of the interest, was on their own account; and was not made, directly or indirectly, for the benefit of the issuer or an underwriter of the security, or for the direct or indirect promotion of any scheme or enterprise with the intention of violating or evading any provision of the Corporate Securities Law. Under such circumstances, a permit was not required (Corp. Code, § 25152, Stats. 1949, ch. 384, § 1, p. 702, repealed 1968 and now covered by § 25104, subd. (a)). This finding has sufficient support in the evidence (*Coutts* v. *Grant* (1960) 184 Cal.App.2d 255, 260-261 [7 Cal.Rptr. 431].)

Defendants assert that the transaction was for the benefit of Alhambra, in that Muth was required to pay off Alhambra's note at the Sumitomo Bank. The payment on behalf of the guarantors subrogated Muth to the rights for payment existing against the corporation. Thus, it was in no better legal position than before. (Uniform Com. Code, § 3603, subd. (2).)

The property conveyed was neither worthless nor fraudulent, and no problem of balancing culpability exists. Alhambra cannot allege its own assertedly wrongful act to repudiate its obligation (Civ. Code, § 3517; *Western Oil etc. Co.* v. *Venago Oil Corp.* (1933) 218 Cal. 733, 745, 746 [24 P.2d 971, 88 A.L.R. 1271]). Neither the defendants' answer nor the pretrial conference order made *pari delicto* an issue.

The trial court likewise found there was no showing that a permit could not have been obtained for the issuance of stock, even at the time of trial, despite the defendants' failure to apply previously (*N. C. Roberts Co.* v. *Topaz Transformer Products, Inc.* (1966) 239 Cal.App.2d 801, 819 [49 Cal.Rptr. 209]). Equity would require such an application, rather than to sustain appellants' contention that by reason of an illegal transaction, they have gained Nakashimas' property, which they cannot recover.

Under the present Corporations Code section 25102, subdivision (h), exemption of transfers like those concerned here where the beneficial interest is held by less than five persons, may be established upon the minimal procedure described. Though not effective at the time of the transactions between Nakashimas and Muth, it reflects the policies pertinent to the matter before us.

Corporations Code section 25100, subdivision (m), provided that the Corporate Securities Law does not apply to transfer of "Any bona fide joint adventure interest, except such interests when offered to the public." (3) Where a corporation has not sought to secure a permit to issue stock, and has not done so, the associates in the venture as between themselves may be considered joint venturers. (*Weinstock* v. *L. A. Carpet, Inc.* (1965) 234 Cal.App.2d 809, 812-814 [44 Cal.Rptr. 852]; cf. *Hargiss* v. *Royal Air Properties, Inc.* (1962) 206 Cal.App.2d 406, 410-412 [23 Cal. Rptr. 678]; *Claremont Press Publishing Co.* v. *Barksdale* (1960) 187 Cal. App.2d 813, 816 [10 Cal.Rptr. 214]; *Morris* v. *Whittier Amusement Co.* (1932) 123 Cal.App. 121, 123 [10 P.2d 1017], approved in *Holmberg* v. *Marsden* (1952) 39 Cal.2d 592, 597 [248 P.2d 417]; and as applicable to the *alter ego* doctrine, see *Automotriz etc. De California* v. *Resnick* (1957) 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042].)

To recognize the separate identity of Alhambra so as to apply the securities act prohibition assertedly would permit it and Muth to secure the benefit of Nakashimas' property without liability therefor. This is enough to impel recognition of the interests involved as joint venture interests (*Claremont Press Publishing Co.* v. *Barksdale, supra,* 187 Cal.App.2d 813, 817; *Engineering etc. Corp.* v. *Longridge Inv. Co.* (1957) 153 Cal.App.2d 404, 415 [314 P.2d 563]; *Hillman* v. *Hillman Land Co.* (1947) 81 Cal.App.2d 174, 184-185 [183 P.2d 730]; *Glassell* v. *Prentiss* (1959) 175 Cal.App.2d

599, 601, 603 [346 P.2d 895]; *Drdlik* v. *Ulrich* (1962) 203 Cal.App.2d 360, 365 [21 Cal.Rptr. 642]).

Defendants seek to attack the original transaction by which the Nakashimas transferred their property to the corporation, in exchange for their corporate interest. This is alleged to have been invalid, since made without a permit (Corp. Code, § 25500, repealed 1968, covered now by §§ 25103, 25110, 25120 and 25130). Hence, it is urged, Nakashimas had nothing to sell to Muth, since they did not validly acquire any interest in Alhambra. Since this contention was not litigated during the trial (first asserted in a request for special findings), this is not an issue which we are compelled to explore (*Johnson* v. *Hapke* (1960) 183 Cal.App.2d 255, 261 [6 Cal.Rptr. 603]; *Algeri* v. *Tonini* (1958) 159 Cal.App.2d 828, 832 [324 P.2d 724]).

If Alhambra never acquired title to any of Nakashimas' property, though it built upon it and sold it, Nakashimas have the right to recover the property, with the profits thereof, or its value where Alhambra has transferred it to others. The transfer of Nakashimas' rights to Muth would not be a transfer of any security of the corporation, but rather, of causes of action against it (cf. *Richards* v. *Oliver* (1958) 162 Cal.App.2d 548, 562-563 [328 P.2d 544]; *Coutts* v. *Grant, supra,* 184 Cal.App.2d 255, 260; *Smith* v. *Randall* (1942) 51 Cal.App.2d 195, 197 [124 P.2d 334]). The return of the property transferred to Alhambra, pro tanto, in the form of the $60,000 note upon which judgment was given in this action was not inhibited, but commanded by justice (*Ogier* v. *Pacific Oil & Gas Dev. Corp.* (1955) 135 Cal.App.2d 776, 780-781 [288 P.2d 101]; see also, *Walker* v. *Harbor Realty etc. Corp.* (1931) 214 Cal. 46, 48 [3 P.2d 557]).

The judgment is affirmed, with costs on appeal to respondents.

Shoemaker, P. J., and Taylor, J., concurred.