429 So.2d 340 (1983)
PETTIGREW & BAILEY, a Dissolved Florida Law Partnership, Melvin C. Morgenstern, Joseph J. Weisenfeld, Lawrence Weiner, and Guy B. Bailey, Jr., Appellants,
v.
Cecyl L. PICKLE, Individually, and Andrew J. Anthony, Individually, Appellees.
Nos. 80-1604, 81-86.
District Court of Appeal of Florida, Third District.
March 8, 1983.
Rehearing Denied April 27, 1983.
Bailey & Dawes and Jesse C. Jones, Miami, for appellants.
Wicker, Smith, Blomqvist, Davant, Tutan, O'Hara & McCoy and Richard A. Sherman, Miami, for appellees.
Before HENDRY, BASKIN and FERGUSON, JJ.
BASKIN, Judge.
Appellants seek reversal of a summary judgment entered in their action for damages predicated upon malicious prosecution and abuse of process. In a consolidated interlocutory appeal, appellees challenge the timeliness of the filing of appellant's notice of appeal. Finding neither error in the entry of summary judgment nor abuse of discretion in the redating of the notice of appeal by the trial court, we affirm.
*341 The lawsuit alleged as the basis for the malicious prosecution action resulted from unusual circumstances. During the pendency of an action by Intercontinental Controls Corporation (ICC) against Robert Vesco in a New York federal court, the court authorized ICC to guard against the removal of Robert Vesco's yacht, the Patricia III, docked in Dania, Florida. In order to carry out the court's order, ICC engaged the law firm of Pettigrew and Bailey, which, in turn, employed Pinkerton's of Florida, Inc. to guard the vessel. When the Pinkerton's guard was challenged by men carrying shotguns and presenting documents indicating that Pinkerton's had no legal right to detain the vessel, the guard contacted the U.S. marshal. The U.S. marshal confirmed Pinkerton's lack of authority to hold the vessel, apparently because attachment had not been authorized by the proper court, the United States District Court for the Southern District of Florida. Consequently, the guard released the Patricia III; the vessel was never recovered.
ICC sued Pinkerton's in the Dade County Circuit Court to recover for the loss of the yacht. Several months later, ICC's counsel, the law firm of Pettigrew and Bailey, dissolved. Attorneys Wisenfeld, Weiner, and Bailey entered separate law practices. Morganstern had already left the firm. The remaining partners[1] formed a new firm later known as Arky, Freed, Stearns, Watson, and Greer, which became counsel for ICC. Representing Pinkerton's, Pickle and Anthony filed a third-party complaint for contribution from Pettigrew and Bailey, contending that when Pettigrew and Bailey executed the employment contract with Pinkerton's, the firm negligently failed to attach the vessel in Florida. Pinkerton's maintained that any negligence on its part in releasing the vessel was occasioned by Pettigrew and Bailey's negligence. The third-party complaint was served on Morganstern, who was later dismissed from the action, on Wisenfeld, Weiner, Bailey, and on the former Pettigrew and Bailey partners who comprised Arky, Freed, Stearns, Watson, and Greer.
After the court granted ICC's motion for summary judgment as to liability and struck Pinkerton's third-party complaint against Pettigrew and Bailey as a sham, ICC settled its action against Pinkerton's. As part of the settlement, Pinkerton's, Pickle, and Anthony received a release from the law firm of Pettigrew and Bailey, signed by one of its general partners, Eugene Stearns.[2] Upon receipt of the release, ICC and Pinkerton's stipulated to dismissal of their claims, and Pinkerton's released all claims against Pettigrew and Bailey.[3]
*342 The settlement did not end matters, however. The dissolved firm of Pettigrew and Bailey, and Morganstern, Weisenfeld, Weiner, and Bailey, individually, sued Pickle and Anthony for malicious prosecution and abuse of process in filing the third-party claim. In defense, appellees cited the release executed by Stearns. When the court granted summary judgment in favor of appellees, this appeal ensued. Appellants contend that the court erred in entering summary judgment because they established the elements necessary to prove malicious prosecution. They point to the court's striking of the third-party complaint as a sham and to the subsequent settlement as evidence that they were prosecuted maliciously. Although their argument reflects a valid concern, we do not reach the question of whether appellants could have proven malicious prosecution in a subsequent trial. Instead, we hold that the release signed by Stearns defeats appellants' case and supports the summary judgment.
During the existence of a partnership, every partner serves as an agent for the purpose of conducting partnership business, section 620.60,[4] Florida Statutes (1975), and "[t]he act of every partner, ... binds the partnership, ..." Although dissolution terminates the authority of a partner to act for the partnership, a partner is authorized to wind up partnership affairs or to complete unfinished transactions. § 620.73,[5] Fla. Stat. (1975). The initial lawsuit[6] by ICC against Pinkerton's led to the filing of the third-party complaint by Pinkerton's against Pettigrew and Bailey. In the interim, Pettigrew and Bailey dissolved. Although the third-party complaint was filed after the partnership dissolution, and served as the basis for the malicious prosecution action, it was predicated upon matters which arose in connection with the Patricia III. Accordingly the filing of the third-party complaint was covered by Stearns' release. Conversely, had the third-party complaint been prosecuted to a conclusion, Pettigrew and Bailey would have been subject to liability even though the firm had dissolved. In re David, 54 F.2d 140 (S.D.Fla. 1931).
The malicious prosecution action was inexorably intertwined not only with the filing of the third-party complaint after the partnership dissolved, but also with the original action between ICC and Pinkerton's *343 instituted before dissolution. Because "[d]issolution has no effect whatever on the rights of third persons, or on the right of the firm against third persons, so it is a general rule that actions by and against the firm must continue to be what they would have been before the dissolution. Nathan v. Thomas, 63 Fla. 235, 58 So. 247, 248 (1912) (quoting 2 Parsons on Partnerships § 300 (4th ed. 1893)). Thus the execution of the release in connection with the settlement constituted an act appropriate to winding up and bound the firm and its members. See Cotten v. Perishable Air Conditioners, 18 Cal.2d 575, 116 P.2d 603 (1941); § 620.73(1)(a), Fla. Stat. (1979); cf. Adelman v. United States, 304 F. Supp. 599 (C.D.Cal. 1969), aff'd, 440 F.2d 991 (9th Cir.1971) (partners' execution of waiver of statute of limitations for collection of excise taxes after dissolution was an act appropriate to winding up of partnership affairs).
For these reasons, we find that Stearns was authorized under the Uniform Partnership Act to execute the release of potential claims resulting from the settled lawsuit on behalf of the partners of Pettigrew and Bailey and that the release covered the claims asserted in the malicious prosecution action. Accordingly, we affirm the summary judgment.
We have not overlooked the contention that the trial court erred in amending the filing date of the notice of appeal and that the appeal was therefore untimely. Upon due consideration, we find no merit in appellees' argument. Before correcting the notice to reflect the actual filing date, the trial court weighed the evidence concerning the accuracy of the court clerk's date stamp and considered affidavits averring that the notice and check were delivered within the applicable filing period. A clerical error may be corrected by the court. Town of Hialeah Gardens v. Hendry, 376 So.2d 1162 (Fla. 1979); R.R. Ricou & Sons v. Merwin, 94 Fla. 86, 113 So. 745 (1927); Luhrs v. State, 394 So.2d 137 (Fla. 5th DCA 1981); Fla.R. Civ.P. 1.540(a);[7]see also Knee v. Smith, 313 So.2d 117 (Fla. 1st DCA 1975), cert. denied, 330 So.2d 726 (Fla. 1976).
For these reasons, we affirm the summary judgment entered by the trial court.
NOTES
[1] These partners are not participants in this action.
[2] The release executed by Pettigrew and Bailey stated:

RELEASE
KNOW ALL MEN BY THESE PRESENTS
THAT, Pettigrew and Bailey, a Florida Partnership, by and through a general partner, for and in consideration of the payment of One Dollar ($1.00) by Pinkerton's of Florida, Inc., (hereinafter `Pinkerton's'), or its insurors, Home Insurance Company (hereinafter `Home') and Unigard Insurance Company (hereinafter `Unigard'), the receipt of which is hereby acknowledged, have remised, released and forever discharged Pinkerton's, Home, Unigard, the law firm of Knight, Peters, Pickle, Niemoeller & Flynn and its employees, of and from all, and all manner of action and actions, cause and cause of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claim and demand whatsoever, in law, in admiralty, or in equity, which are a result of the Patricia III matter which is the subject of litigation between International Controls Corp., Pinkerton's, and Pettigrew and Bailey, which against Pinkerton's, Home, Unigard, the law firm of Knight, Peters, Pickle, Niemoeller & Flynn and its employees, Pettigrew and Bailey had, now has, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever to the day of the date of these presents.
IN WITNESS WHEREOF, a general partner has set his hand and seal the 22nd day of May, 1978.
 PETTIGREW AND BAILEY
 By /s/ Eugene E. Stearns (Seal)
 A General Partner

[3] Pinkerton's release of Pettigrew and Bailey provided:

RELEASE
KNOW ALL MEN BY THESE PRESENTS
THAT, PINKERTON'S OF FLORIDA, INC. (hereinafter `PINKERTON'S') has remised, released and forever discharged Pettigrew and Bailey, a Florida partnership, (hereinafter `P & B') and the law firm of Arky, Freed, Stearns, Watson & Greer, and its employees, (hereinafter `AFSWG') of and from all, and all manner of action and actions, cause and cause of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claim and demand whatsoever, in law, in admiralty, or in equity, which are a result of the Patricia III matter which is the subject of litigation between International Controls Corp., a Florida corporation, Pinkerton's and P & B, which against P & B or AFSWG Pinkerton's had, now has, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever to the day of the date of these presents.
IN WITNESS WHEREOF, Pinkerton's of Florida, Inc. by and through its undersigned officers has set its hand and seal the 31st day of May, 1978.
[4] Section 620.60, Florida Statutes (1975) states:

(1) Every partner is an agent of the partnership for the purpose of its business. The act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no authority.
[5] Section 620.73, Florida Statutes (1975) provides:

(1) After dissolution a partner can bind the partnership except as provided in subsection (3):
(a) By an act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution.
[6] ICC v. Pinkerton's, Civ. No. 75-37216 (11th Judicial Circuit of Florida).
[7] Florida Rule of Civil Procedure 1.540(a) states:

(a) Clerical Mistakes. Clerical mistakes in judgments, decrees or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal such mistakes may be so corrected before the record on appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court.