**FIRST NAT. BANK & TRUST CO IN MACON, GA., v. UNITED STATES.**

**No. 9566.**

Circuit Court of Appeals, Fifth Circuit.

Oct. 30, 1940.

Charles M. Cork and C. Baxter Jones, both of Macon, Ga., for appellants.

Mills Kitchin, Sp. Asst. to Atty. Gen., and T. Hoyt Davis, U. S. Atty., of Macon, Ga., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

George S. Jones in his 1936 income tax return took deductions in full of a loss sustained by his stock in Standard Realty Company having become valueless and its having been surrendered by him; and the further loss of a debt of about $1,000 against Standard Realty Company having been ascertained to be worthless and charged off during the year. The deductions were denied, additional taxes were assessed and paid, and a suit in the district court to recover them did not succeed. This appeal followed.

Jones owned one-fourth of the capital stock of Standard Realty Company which had cost him in the year 1929 $12,588. The Company owned only a block of city stores, originally worth $80,000, and its only business was the renting of them. The stores were mortgaged, the balance due in December, 1936, being about $21,875, and the mortgage note was indorsed by Jones and two other stockholders and by W. E. Dunwoody and S. T. Coleman. The Company also owed bank notes for $3,550 similarly indorsed, and it owed its stockholders for advances made in propor-

tion to their stock, the sum advanced by Jones being about $1,000. Dunwoody and Coleman owned wholly Cherokee Brick Company which owned half the stock of Standard Realty Company. Things had gone badly with Standard Realty Company in the great depression, and the rents did not suffice to pay repairs, insurance, interest and taxes and other expenses. Effort was made to sell the stores for $40,000, but no offers could be gotten. The only prospective renter desired costly improvements. Dunwoody and Coleman thought the improvements ought to be made, and the debts refinanced, and that the Company might go forward. Jones and the other two stockholders, owning together half the stock, thought the situation hopeless, and refused to advance more money or to indorse further. In this deadlock, on Nov. 20, 1936, a letter was written by one of the pessimists in behalf of all to a representative of the optimists, Coleman and Dunwoody, in which an offer was made as follows: "George [Jones], Johnson and I will transfer to Coleman and Dunwoody all our stock in the Standard Realty Company;" and if called on, will continue to indorse, but "Coleman and Dunwoody to agree that ultimately they will stand between us and any liability or loss by reason of this indorsement;" the amounts due to the proposers as stockholders to remain as Company obligations and to be paid "if and when the Company is able to do so, Coleman and Dunwoody, however, to assume no personal obligation or responsibility as to these amounts." The letter concluded with a wish that "the taking over of the stock would prove ultimately to be highly profitable to you, and there certainly would be no feeling of criticism or resentment should this be the case." On Dec. 31, 1936, Dunwoody replied: "We are willing to accept your offer and take your stock in the Standard Realty Company and guarantee you against liability on your indorsement [on certain minor conditions]. However we would want to cancel all indebtedness of the Company to you, as it looks like it will be a long time before the Company will be in position to pay it." Jones, for his group, answered on the same day that "Mr. Dunwoody's letter is not very different from our proposition," and that when the mortgage and bank notes are paid or renewed "without our indorsement, we will transfer all of our stock to them." On that very day the certificates were indorsed in blank and delivered to Dunwoody and Coleman, and Jones charged off his claim of $1,000 against the Company. Thereafter, but on the same day, a stockholders' meeting of Standard Realty Company was held of which a minute was made (after reciting as present only "Dunwoody as president of Cherokee Brick Company, the owner of 375 shares of stock;"), that Jones and his associates, former owners of 375 shares of stock "had surrendered their stock as being worthless, and Cherokee Brick Company being the owner of all the other outstanding stock and the charter not permitting the reduction of the capital stock below $75,000; it was therefore resolved that all of said surrendered stock be issued to Cherokee Brick Co." Standard Realty Company was refinanced, its property improved and rented, and it continued in business.

■■■ Jones undoubtedly suffered a loss both of his investment in the stock and of his debt against the Company, for he had neither after Dec. 31, 1936, and nothing tangible in place of them. But not every loss can be deducted. Deductions are not a matter of constitutional right but of legislative grace. They can be taken only when and to the extent the statute allows. This taxpayer had held his stock since 1929, it was a capital asset, and if his loss, finally realized by his parting with it, was by a "sale or exchange", only $2,000 could be deducted, which the Commissioner allowed. Revenue Act of 1936, Sect. 117 (d), 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 875. If we read only the minutes of Dec. 31, 1936, of Standard Realty Company, it might be thought the stock had been given to the Company as worthless. Jones was not present at the meeting, and the correspondence above recited shows that no transaction occurred between him and the company. The negotiation was with Dunwoody and Coleman as individuals. The agreement the parties reached was not that the stock should be surrendered to the Company for nothing, but that it was to be transferred to Dunwoody and Coleman for a valuable consideration moving from them. Jones was to be relieved from his share of large indorsements, as between him and his coindorsers his share being one-fourth, and Dunwoody and Coleman were to take his place. Whether this transfer of obligation amounted to over $6,000, or was really nothing because the Company was possibly solvent, may be a question, but because

it was a question we think it a valuable consideration. There was both benefit to Jones and detriment to Dunwoody and Coleman, and either would be sufficient. Because the stock was transferred for a valuable consideration we hold there was a sale. Only $2,000 was deductible.

The debt Jones held against the Company was worthless or not according as the Company had assets in excess of the mortgage or not. Nothing happened to the Company itself to show the final worthlessness of the debt. On Nov. 20 Jones and his associates were wishing to retain their claims against the Company as of some value. They parted with them along with their stock in order to get release from their indorsements. They charged them off at last not on the ground of worthlessness but because for a valuable consideration they had agreed to. They disabled themselves from afterwards by possibility collecting them and making a returnable profit, as may be done when a debt is simply charged off as worthless. We do not think a deduction was due on account of this debt under Revenue Act of 1936, Sect. 23(k), 49 Stat. 1648, 26 U.S.C.A.Int.Rev.Acts, page 828.

Judgment affirmed.