The ESTATE of Robert B. DUPREE, Robert P. Dupree, Independent Executor, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22891.

United States Court of Appeals Fifth Circuit.

March 11, 1968.

William R. Pakis, Waco, Tex., for appellant.

Ernest Morgan, U. S. Atty., Ted Butler, Asst. U. S. Atty., San Antonio, Tex., Mitchell Rogovin, Asst. Atty. Gen., John B. Jones, Jr., Lee A. Jackson, Meyer Rothwacks, Harold C. Wilkenfeld, Donald W. Williamson, Attys., Dept. of Justice, Washington., D. C., for appellee.

Before COLEMAN and AINSWORTH, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge:

The estate of Robert B. Dupree, deceased taxpayer, seeks a refund of income taxes paid by the deceased prior to his death for the year 1960.

In 1947, a limited partnership known as "Stroud's Motor Courts" was organized under the laws of Missouri for the purpose of operating the Park Plaza Motor Court, a motel in St. Louis, Missouri. The partnership had one general partner, Lemuel L. Stroud, and five limited partners. The major partnership asset, the motel, was held in the name of Lemuel L. Stroud and his wife, individually, but by written agreement, was held by them as property of the partnership.

The taxpayer and his wife, Katherine P. Dupree, owned as their community property, a 15% limited interest in the partnership. On September 25, 1957, Katherine P. Dupree died, leaving her one-half of the 15% partnership interest to her son, Robert P. Dupree. Thereafter, the taxpayer, Robert B. Dupree, and his son, Robert P. Dupree, each owned a 7½% interest in the partnership. The taxpayer, upon the death of his wife, obtained a new basis for his 7½% of the partnership interest pursuant to 26 U.S.C.A. Section 1014(b) (6).[1] An audit completed in December, 1960, of Mrs. Dupree's estate tax return resulted in a determination by the Internal Revenue Service that the fair market value of the Dupree 15% interest in the partnership

as of the date of her death was $142,500.00, so that the taxpayer's new basis in his 7½% partnership interest as of September 25, 1957, was $71,250.00.

On August 1, 1960, the motel was sold to Park Plaza Motor Motel, Inc., a corporation, in which Lemuel L. Stroud was a principal stockholder and president. The sale was reported in the final partnership return for its fiscal year ending March 31, 1961, as a capital gain and $52,441.31 was attributed to the taxpayer as his share of the gain.

The assets of the partnership were distributed to the various partners, and the taxpayer received $42,150.00 cash, and a 7½% interest in two promissory notes, the face value of one secured by a first lien in the face amount of $100,000.00, and a second secured by a second lien on the motel in the face amount of $600,000.00, so that the taxpayer's 7½% face value interest in the notes amounted to $52,500.00. The Internal Revenue Service stipulated that the fair market value of the second lien note was only 50% of its face value, or $300,000.00, so that the fair market value of the taxpayer's interest in that note was only $22,500.00, instead of $45,000.00.

The parties stipulated that if the motel was sold by the partnership, then after the sale, but before the distribution of the cash and the notes, the taxpayer's basis in his partnership interest was $127,706.95.[2] The basis in the notes was reduced

---

**1.** Sec. 1014(a) " * * * the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall * * * be the fair market value of the property at the date of decedent's death * * *.

Sec. 1014(b) " * * * For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from a decedent: * * * (6) * * * property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State * * * if at least one-half of the whole of the community interest in such property was includable in determining the

value of the decedent's gross estate * * *."

**2.** "Fair market value of 7½% partnership interest on or about September 25, 1957.  $ 71,250.00
Plus Robert B. Dupree's share of net earnings through July 31, 1960.  22,015.64
Less Robert B. Dupree's withdrawal through July 31, 1960.  (18,000.00)
Plus Robert B. Dupree's share of capital gain on sale of assets on August 1, 1960.  52,441.31

Robert B. Dupree's basis of 7½% in the partnership interest, after sale and before liquidation distribution.  $127,706.95

by the amount of cash money received by him ($42,150.00) to $85,556.95.[3]

An audit of the final partnership return resulted in a determination by Internal Revenue on March 19, 1962, that the partnership terminated in 1960, and not in 1961 as claimed on the return. A subsequent and related audit of taxpayer's individual return for the year 1960, resulted in a deficiency assessment of $17,388.77 additional tax based on a $52,441.31 capital gain by taxpayer from his share of the sale of the motel properties.[4] The additional tax was paid and is the basis for this suit.

In charging the taxpayer with the capital gain of $52,441.31, no consideration was given to taxpayer's basis for his 7½% interest in the partnership (as distinguished from his 7½% interest in the assets of the partnership).

Subsequent to the audit of taxpayer's individual 1960 return, an amended partnership return was filed in September 1963, signed by M. L. Stroud, Jr., as "General Partner", with a Schedule A, which sought to exercise an election by the partnership under the provisions of Section 754 of the 1954 Internal Revenue Code to adjust the basis of partnership property under Sections 734(b) and 743(b)[5] of the Code for the taxable year ending December 31, 1960.

The taxpayer sought a summary judgment on two grounds: (1) that he had sustained an ordinary loss in 1960, for the difference between his basis in his 7½% interest in the notes received as proceeds from the motel sale and the actual face value of such interest; and (2) that a proper Section 743 election had been made. The district judge denied the motion.

In due course the case proceeded to a jury trial upon three issues raised by the plaintiff taxpayer:

(1) That the taxpayer had an ordinary loss in 1960, as above noted;

(2) That a proper election under Section 743 had been made by the amended return filed in 1963; and

---

3. 26 U.S.C.A. Sec. 732(b):
"The basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction."

4. 26 U.S.C.A., Sec. 702:
"(a) General Rule.—In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—
(1) gains and losses from sales or exchanges of capital assets held for not more than 6 months.
(2) gains and losses from sales or exchanges of capital assets held for more than 6 months,
(3) gains and losses from sales or exchanges of property described in Section 1231 (relating to certain property used in a trade or business and involuntary conversions)."

5. 26 U.S.C.A. 743(b):
"Adjustment to basis of partnership property. In the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner, a partnership with respect to which the election provided in Section 754 is in effect shall—

(1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, or
(2) decrease the adjusted basis of the partnership property by the excess of the transferee partner's proportionate share of the adjusted basis of the partnership property over the basis of his interest in the partnership.
Under regulations prescribed by the Secretary or his delegate, such increase or decrease shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. A partner's proportionate share of the adjusted basis of partnership property shall be determined in accordance with his interest in partnership capital and, in the case of an agreement described in Section 704(c) (2) (relating to effect of partnership agreement on contributed property), such share shall be determined by taking such agreement into account. In the case of an adjustment under this subsection to the basis of partnership property subject to depletion, any depletion allowable shall be determined separately for the transferee partner with respect to his interest in such property."

(3) That the partnership had in fact terminated prior to the sale of the motel properties.

At the conclusion of plaintiff's case-in-chief the Court granted the government's motion for directed verdict as to all three grounds. Taxpayer asserts here as error the denial of the summary judgment and the directed verdict.

## I.

Under his first theory advanced as grounds for recovery, taxpayer contends he was not given credit for an ordinary loss of $33,056.95, allegedly realized by him in 1960, computed as follows:

| | |
|---|---|
| Dupree's basis of his 7½% interest in partnership 8/1/60. | $127,706.95 [6] |
| Less cash received. | 42,150.00 |
| Dupree's basis of his 7½% interest in notes at face value. | 85,556.95 |
| 7½% of face value of notes. | 52,500.00 |
| Claimed loss. | $33,056.95 |

6. See footnote 2, supra, for computation of the $127,706.95 figure.

7. "Section 165. Losses.
     (a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *"

8. Section 731. Internal Revenue Code.
     "Extent of recognition of gain or loss on distribution.
     (a) Partners.—In the case of a distribution by a partnership to a partner—
     (1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and
     (2) loss shall not be recognized to such partner, except that upon a distribution in liquidation of a partner's interest in a partnership where no property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of—

Taxpayer claims entitlement to take an ordinary loss deduction of the $33,056.95, under the provisions of Section 165(a) [7] of the Code. Taxpayer argues that it is obvious that the notes could never produce more than their face value ($52,500.00 for a 7½% interest) and that since his basis for his interest in them was $85,556.95, he sustained an ordinary loss immediately upon his receipt of such interest.

The taxpayer's position seeks to circumvent the mandate of Section 731 [8] of the Code. That section clearly defers for tax purposes recognition (as distinguished from realization) [9] to a partner of a loss on notes received in a distribution from a partnership. The basis of the partner's interest in such notes, received in liquidation, is computed under Section 732(b) of the Code (footnote 3, supra).

■■■ While Section 165(a) is a broad relief measure, as pointed out by taxpayer, the specific language of Section 731 prevails over the general language of Section 165(a) as to a fact sit-

     (A) any money distributed, and
     (B) the basis to the distributee, as determined under Section 732, of any unrealized receivables (as defined in Section 751(c)) and inventory (as defined in Section 751(d) (2)).
Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner.
     (b) Partnerships.—No gain or loss shall be recognized to a partnership on a distribution to a partner of property, including money.
     (c) Exceptions.—This section shall not apply to the extent otherwise provided by Section 736 (relating to payments to a retiring partner or a deceased partner's successor in interest) and Section 751 (relating to unrealized receivables and inventory items)."

9. "Deductions are not a matter of constitutional right but of legislative grace. They can be taken *only when* and to the extent the statute allows." First National Bank & Trust Co. in Macon, Ga., v. United States, 115 F.2d 194 at page 195 (5th Cir. 1940).

uation falling within the ambit of Section 731. In D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, at page 208, 52 S.Ct. 322, at page 323, 76 L.Ed. 704 (1932), the Supreme Court held:

> "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. United States v. Chase, 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117, 119, 8 Am.Crim.Rep. 649. Specific terms prevail over the general in the same or another statute which otherwise might be controlling."

So, Section 731 prevailing, the loss—though unquestioned—would not be recognized in 1960.

■ In passing, we note that taxpayer's death deprived him of ever receiving income tax recognition of the loss sustained. Even if this were inequitable, there is no equity in tax law, Carlton v. United States of America, 385 F.2d 238 (5th Cir. 1967), but it was not inequitable because the taxpayer was in no different position than any other citizen who held a capital asset which had dropped in value but who died before selling the asset and obtaining a recognizable tax loss on it.

## II.

■ When the taxpayer received a stepped-up basis in the value of his partnership interest as a result of the death of his wife in 1957, the basis of his partnership interest became considerably larger than his proportionate share of the adjusted basis of the partnership property ($71,250.00 vs. $14,973.27). Ordinarily, the fact that a taxpayer received a stepped-up basis in his partnership interest by virtue of a transfer on the death of a partner, does not affect the basis of the partnership property. However, Section 743(b) of the Code (footnote 5, supra) permits an adjustment in the partnership makes an election under Section 754 of the Code. The adjustment to the basis of the partnership's assets is for the benefit of the transferee partner only, and the special basis adjustment is measured by the difference between the transferee's basis for his partnership, interest and his proportionate share of the partnership's basis for its assets at the time of the transfer.

In the case before us the transfer giving rise to a right of an election under Section 754, was that occasioned by the death of Mrs. Dupree in 1957. If a valid election had been effected, the taxpayer would have been entitled to a special basis adjustment by an increase of the basis of his proportionate share of partnership assets, in the amount of $56,276.73 (the difference between $71,250.00 and $14,-973.27). Instead of a $52,441.31 capital gain he would have had a $3,834.42 loss on the sale of the motel properties. Although an election was attempted by the partnership, the validity of that election is in issue. The partnership in filing its original return on July 15, 1961, for the 1960 tax year, did not make the Section 754 election, but instead separately stated the taxpayer's distributive share of the gain realized from the sale of its assets without employing any special adjustment for his benefit. Subsequently, on September 24, 1963, as previously noted herein, the partnership filed an amendment to its 1960 return for the sole purpose of making the election under Section 754, for the 1960 tax year.

■ The government contends the election was too late to be effective. Assuming that an election could have been made for the first time for the 1960 taxable year (which position the government disputes), the government insists the election could not be by an amendment filed over two years after the original return for 1960 was due. We agree. Cases involving elections under other sections of the Internal Revenue Code have permitted an election to be validly exercised only in an original return or in a timely amendment, with "timely amendment" meaning if filed within the period provided by the statute for filing the original return. J. E. Riley Investment Company v. Commissioner of Internal

Revenue, 311 U.S. 55, 61 S.Ct. 95, 85 L. Ed. 36 (1940); Scaife & Sons Co. v. Commissioner of Internal Revenue, 314 U.S. 459, 62 S.Ct. 338, 86 L.Ed. 339 (1941). We conclude that for a valid election to have been made for the taxable year 1960, it should have been timely made in the original return or by an amended return filed within the statutory time for filing the original return.

In view of our conclusion that the election was made too late to be valid, it is unnecessary to consider and decide the second defense of the government that an election could be made for the first time only in the year of the transfer—1957. We note that a recent district court case, Neel v. United States, 266 F. Supp. 7 (N.D.Ga., 1966), decided that issue adversely to the government but we express no opinion here as to that case or issue, declining instead to consider it because of it being unnecessary to do so in order to decide the case before us.

### III.

As his third alternative theory for recovery, the taxpayer asserts that the individual partners—and not the partnership—sold the motel properties. He sought a jury verdict on that issue and cites as error the adverse directed verdict at the close of his case-in-chief.

Was there a complete absence of probative facts to support the taxpayer's position? Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Planters Manufacturing Co. v. Protection Mut. Ins. Co., 380 F.2d 869 (5th Cir., 1967). After a careful examination of the entire record, we agree with the conclusion of the district judge. There was no evidentiary basis for submitting this issue to the jury.

The record shows that prior to the 1960 motel properties sale, each limited partner executed statements recognizing the contemplated sale was that of property owned by the partnership and ratifying execution of contracts by Stroud as general partner; that the deed to the purchaser was from Stroud and his wife; that the check representing the cash por-

tion of the purchase price was deposited in a new account opened in the name of the partnership; that the check was endorsed: "Lemuel L. Stroud, Jr., (partner)", the sales proceeds were distributed by the partnership to the partners by checks drawn on the partnership account; both the partnership's books and the March 1961 final partnership return treated the sale as one by the partnership; that the partnership paid a real estate sales commission on the sale; that after the sale for a period of several months the partnership dispensed substantial amounts in payment of creditors of the partnership; that in June 1961, the partners jointly executed a document cancelling the certificate of limited partnership on file with the State of Missouri.

The only relevant evidence favorable to the position of the taxpayer was the testimony of Robert P. Dupree who testified that he "understood the partners were to dissolve the partnership and to sell the property and to receive the proceeds therefrom"; that it was his "preference that each partner should receive his separate note" from the sale; that he objected to the filing of the final partnership return prior to its filing; and that he and his father (the deceased taxpayer here) "were informed that the partnership was to terminate." Such evidence, accepted as true, merely states the desire of Robert P. Dupree and falls short of any evidentiary basis for reasonable men to be able to conclude that the partnership did, in fact, terminate prior to the sale. That the partnership—and not the individual partners—sold the motel properties is the only conclusion that could, with reason, be reached on the evidence including all reasonable inferences to be deduced therefrom.

### CONCLUSION

The claim of an ordinary loss in 1960 and the contention that a proper Section 743 election had been made were legal issues properly resolved by the district judge so that no error was committed in denying summary judgment or granting

a directed verdict for the government as to them. The theory of a dissolution of the partnership prior to the sale failing to have any evidentiary support, there was no error in withdrawing that issue from the jury and directing a verdict as to it for the government. Accordingly, the judgment below is

Affirmed.