ESTATE OF ERNEST D. SKAGGS, DECEASED, CAROLYN C. FIKE, EXECUTRIX, AND CAROLYN C. FIKE, FORMERLY CAROLYN C. SKAGGS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6546–78.     Filed October 30, 1980.

*Philip H. Wile*, for the petitioners.
*Henry E. O'Neill*, for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax for 1974 as follows:

| Petitioner | Deficiency |
| --- | --- |
| Estate of Ernest D. Skaggs | $151,858 |
| Carolyn C. Fike | 110,113 |

Due to concessions by petitioners, the following issues remain for decision:

(1) Whether certain assets held by a partnership, whose

members, Ernest D. Skaggs and his wife, Carolyn (now Carolyn C. Fike), held their partnership interests as community property, were acquired from or passed from a decedent upon Ernest D. Skaggs' death so that the bases of the assets of the partnership were then adjusted under section 1014(a)[1] and (b)(6).

(2) If the bases of the assets were not adjusted at Ernest D. Skaggs' death, whether Carolyn C. Fike in the petition filed in the instant case made a valid election under section 754 to permit an adjustment in the bases of those assets pursuant to sections 743(b) and 755.

When the petition was filed, Carolyn C. Fike (petitioner), who has filed this action in her individual capacity and as executrix of the Will of Ernest D. Skaggs (Ernest), was a legal resident of Raymond, Calif. She filed 1974 Federal income tax returns for herself and for the estate with the Director, Fresno Service Center, Fresno, Calif.

Before his death on December 31, 1973, Ernest and petitioner, husband and wife, conducted a farming business as equal partners in a two-member partnership known as Santa Rita Ranch Co. (the partnership). They owned their capital interests in the partnership as community property. The partnership maintained its records on the basis of a calendar year.

A written memorandum of partnership agreement was executed on April 22, 1967, and effective as of January 1, 1967. The partnership agreement (in article 8) provided that the partnership of Ernest and petitioner was to "terminate" on the death of either partner. It further provided (in article 10):

In the event of the death of either partner at a time when the partnership shall not have already made the election provided in Section 754 of the Internal Revenue Code, as amended, to adjust the basis of the partnership property, the estate of such deceased partner shall be entitled to determine whether the partnership shall make such election and the remaining partner shall abide by such determination.

Prior to December 31, 1973, the partnership was engaged in farming 1,736 acres of land in Merced County, Calif., producing cotton, corn, sugar beets, alfalfa, and other annual crops. The land was leased by the partnership under an oral lease from Lillian Christiana. In July 1973, the partnership assumed control

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

over the operation of certain property known as the "Raymond Ranch." This property was used primarily as grazing land under contractual arrangements with various cattle owners who were permitted to graze their cattle on the property for prescribed fees.

As of December 31, 1973, when Ernest died, the partnership owned certain depreciable assets and certain crops. At that time, the partnership held 435 bales of harvested but unsold cotton, a sugar beet crop, then estimated at 11,550 tons, which was in the ground subject to harvest in the spring of 1974, and accounts receivable for corn and milo harvested and delivered but not yet paid for by purchasers. The partnership was heavily indebted to the Bank of America for crop loans in the amount of $158,000 to cover the cost of producing 1973 crops which had not yet been sold or for which sales proceeds had not yet been collected. Additional debts in the amount of $47,687.14 were outstanding. To realize proceeds from the crop assets and to repay the bank loan, it was essential that business operations conducted by the partnership prior to December 31, 1973, be continued for the purposes of collecting the receivables, selling unsold crops, and harvesting and selling the beet crop.

No notice of dissolution of the partnership was published in any newspaper. Nor was any affidavit showing the publication of such a notice filed with the county clerk.

All of the community property owned by Ernest and petitioner at the date of his death, including both the partnership interest of Ernest and that of petitioner, became subject to probate administration in the Merced County Superior Court (hereinafter the Superior Court). Under Ernest's will, which was admitted to probate on February 4, 1974, petitioner was authorized to carry on the farming business owned by the partnership. On February 28, 1974, as executrix, she filed a petition with the Superior Court seeking authority to continue the farming operation, and her petition was granted on March 15, 1974. From December 31, 1973, as executrix, petitioner exercised full management control over the farming business and operations. She completed the sale of crops produced in 1973, collected the proceeds from the sale of those crops, handled the production and sale of crops maturing in 1974, and began preparations for the production of the 1975 crops. The debts outstanding as of December 31, 1973, were paid from crop

income and from collection of accounts receivable or were otherwise discharged during the period beginning January 10, 1974, and ended September 1974.

On November 7, 1974, Santa Rita Farms, Inc., was incorporated, and the corporation leased the farm property which had been leased and operated by the partnership. The lease to the corporation preserved for "the prior tenant" the right to harvest crops still growing on the land on November 7, 1974. The corporation paid Ernest's estate $70,000 to reimburse it for expenses paid with respect to future crops not ready for harvest on November 8, 1974. The farming business conducted under petitioner's supervision was continued to complete the harvest and sale of the crops not conveyed to the corporation and to pay expenses incurred in the business.

On December 6, 1974, petitioner acquired 500 shares of the capital stock of Santa Rita Farms, Inc., all of the shares issued prior to February 27, 1975. Before February 10, 1975, all obligations of the farming business had been discharged. On February 27, 1975, she acquired an additional 15,000 shares in exchange for certain equipment and additions to rented farm labor houses, all of which was used in the farming business of the partnership before Ernest's death. These items were distributed to petitioner in her individual capacity from the estate pursuant to court order on February 26, 1975.

Federal and State income tax returns for the partnership were filed for 1973. Pursuant to advice of counsel, no further partnership returns were filed for the partnership and no election under section 754 was filed on any return. No application for an extension of time for filing either the 1973 partnership return or a section 754 election was ever made.

The estate and petitioner filed 1974 Federal income tax returns, each of which reported one-half of the 1974 collections and crop income. In reporting income derived from the sale of crops during 1974, new bases were claimed by the estate and by petitioner in an amount equal to the fair market value of the crops on hand as of December 31, 1973. The claimed bases represented a total increase of $415,936 over the bases of the same assets in the hands of the partnership prior to December

31, 1973. No basis was claimed with respect to the accounts receivable.[2] Depreciation deductions claimed by Ernest's estate and petitioner for the period of the continued operation of the farming business were computed on an amount equal to the fair market value of the depreciable assets as of December 31, 1973.

In the notices of deficiency issued to petitioner and to Ernest's estate, respectively, respondent made the following determination:

> The deduction of $207,968.00 claimed as basis in growing crops is not allowed because it has not been established that you acquired such assets from the decedent within the provisions of section 1014 of the Internal Revenue Code of 1954. Accordingly, your taxable income is increased by $207,968.00.

Due to this denial of the claimed adjustment in basis, respondent also disallowed a portion of the depreciation claimed on assets used in the farming business. In her petition filed June 16, 1978, petitioner sought to elect under section 754 to adjust the bases of partnership assets pursuant to section 743(b).

### 1. Section 1014 Basis Adjustment

The parties agree that under subsection (a) of section 1014,[3] as in effect during the period in issue, the basis of property which was acquired from or which passed from a decedent is generally its fair market value at decedent's death. In the case of community property which was held by a decedent and by a surviving spouse and at least one-half of which was includable in the decedent's gross estate, subsection (b)(6)[4] of that section

---

[2]The accounts receivable were "income in respect of a decedent" under sec. 691, and under secs. 741 and 1014(c) did not receive a step-up in basis. *Quick's Trust v. Commissioner*, 444 F.2d 90, 92 (8th Cir. 1971), affg. per curiam 54 T.C. 1336 (1970). Accord, *Woodhall v. Commissioner*, 454 F.2d 226, 228–229 (9th Cir. 1972), affg. a Memorandum Opinion of this Court. H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 70–71 (1954).

[3]SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(a) IN GENERAL.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death * * *

[4]Sec. 1014(b) provides that—

the following property shall be considered to have been acquired from or to have passed from the decedent:

* * * * * * *

(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State, Territory, or possession of

provides that the surviving spouse's one-half share of the community property shall be treated as property acquired from the decedent and its basis shall also be adjusted. See sec. 1.1014-2(c)(2), Income Tax Regs. The parties differ, however, as to what property of the decedent in the instant case qualifies for the basis adjustment.

According to respondent, the community property held by petitioner and Ernest at his death was not the partnership assets but rather the partnership interests. Citing section 708(a) and (b)(1), he contends that the partnership continued after Ernest's death and that the assets therefore continued to be held in tenancy in partnership. Although the partnership interests qualified for the section 1014 basis adjustment, in respondent's view, a corresponding adjustment in the bases of the partnership assets could be effected only by a partnership election under section 754. Because that election was not timely made by the partnership, respondent argues, the section 1014 basis adjustment applies only to the partnership interests.

In petitioner's view, the partnership terminated on Ernest's death under the terms of the partnership agreement as well as under the principles of Federal tax and California law. Upon termination, the community property subject to probate administration in Ernest's estate included, petitioner contends, the partnership assets as well as the partnership interests. Therefore, the argument goes, the bases of the partnership assets are adjusted under section 1014.

We uphold respondent's determination. While, at first blush, it may seem incongruous that this husband-wife partnership continued after Ernest's death until its affairs were wound up, we think it quite clearly did.

The parties have stipulated that petitioner and Ernest owned their partnership interests as community property at Ernest's death. Those interests, as the parties agree, thus qualify for basis adjustments under section 1014(a) and (b)(6). Petitioner does not contend, and the record does not show, that any of the partnership assets were distributed to Ernest before his death,

---

the United States or any foreign country, if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) or section 811 of the Internal Revenue Code of 1939;

and the bases of those assets, not the partnership interests, are here at issue.

Under California law, Ernest's death did not cause the specific partnership assets, as distinguished from the partnership interests, to pass from him or his estate to petitioner. A partner's interest in a partnership under California law is "his share of the profits and surplus," and he is "co-owner with his partners of specific partnership property," holding, however, as a "tenant in the partnership." Cal. Corp. Code secs. 15024, 15025(1), 15026 (West 1977).[5] *Kenworthy v. Hadden*, 87 Cal. App. 3d 696, 151 Cal. Rptr. 169, 172 (3d Dist. Ct. App. 1978). Unless the partners have provided otherwise in a written agreement which they have all signed, the death of a member does not cause an immediate distribution of the partnership assets but causes a firm dissolution, which is defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Cal. Corp. Code secs. 15029, 15031(4) (West 1977).

Upon the dissolution of a partnership, a partner has the right to an accounting of the value of his partnership interest, in other words, the value of his ratable share of firm profits and surplus remaining after both satisfaction of creditors' claims against the partnership and an accounting between the partners. Cal. Corp. Code secs. 15038, 15040, 15042, 15043 (West 1977). Dissolution does not, however, vest the partners with ownership in specific partnership assets. *Comstock v. Fiorella*, 67 Cal. Rptr. 104, 105–106 (4th Dist. Ct. App. 1968). Indeed, even when a husband-wife partnership is dissolved by the death of the husband, partnership "assets, debts, and credits remain distinct from those of its late members." *Electric Equipment Co. v. Heineman*, 7 Cal. App. 2d 792, 45 P.2d 830, 831 (2d Dist. Ct. App. 1935).[6]

---

[5]Sec. 15024. Property rights

The property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management.

Sec. 15025. Ownership of specific partnership property

(1) Co-owner; tenancy in partnership. A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

Sec. 15026. Interest in partnership

A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property.

[6]In *Electric Equipment Co. v. Heineman*, 7 Cal. App. 2d 792, 45 P.2d 830, 831 (2d Dist. Ct. App. 1935), involving a husband-wife partnership, the court explained:

The record contains no written agreement providing that dissolution would not occur at the death of either petitioner or Ernest. Therefore, it is clear that, under California law, Ernest's death caused a dissolution. The dissolution did not, however, transform the interests of Ernest and petitioner in the firm assets into direct ownership of those assets. The liquidation of the partnership or the winding up of its affairs remained to be accomplished. Hence, it cannot be said that, by operation of California law, the partnership assets became property acquired from or passing from a decedent, within the meaning of section 1014.

Significantly, moreover, the Internal Revenue Code, not State law, determines who is a partner and what is a partnership for Federal tax purposes. Secs. 761(a) and (b), 7701(a)(2). *Evans v. Commissioner*, 447 F.2d 547, 550, 552 (7th Cir. 1971), affg. 54 T.C. 40 (1970); *Baker Commodities, Inc. v. Commissioner*, 415 F.2d 519, 525 (9th Cir. 1969), affg. 48 T.C. 374 (1967), cert. denied 397 U.S. 988 (1970). And it is clear that on December 31, 1973, the partnership did not terminate, within the meaning of section 708[7] (the Code provision which determines whether a partnership is considered as terminated). A partnership is "considered" as terminated "only if," in pertinent part, no part of its business "continues to be carried on by any of its partners in a partnership." Sec. 708(b)(1)(A); sec. 1.708–1(b)(1)(i), Income Tax Regs. With respect to a two-member partnership, the regulations expressly provide that the firm shall not be considered as terminated upon the death of one partner if the estate or other

---

"When a partnership is dissolved by the death of one of the partners, its assets, debts, and credits remain distinct from those of its late members. The surviving partner should proceed to wind up the affairs of the partnership, pay its debts out of the assets, and divide the residue, if any, among those who are entitled thereto."

This case arose under the State law as it stood prior to the adoption of the California version of the uniform partnership law, but its holding is consistent with the law as it stood at Ernest's death.

[7] SEC. 708. CONTINUATION OF PARTNERSHIP.

(a) GENERAL RULE.—For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

(b) TERMINATION.—

(1) GENERAL RULE.—For purposes of subsection (a), a partnership shall be considered as terminated only if—

(A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

successor in interest of the deceased partner "continues to share in the profits or losses of the partnership business." Sec. 1.708–1 (b)(1)(i)(*a*), Income Tax Regs.[8] *Haines v. United States*, an unreported opinion (D. N.J. 1976, 37 AFTR 2d 76–768, 76–1 USTC par. 9222.)[9]

When Ernest died, as stated above, the partnership owed debts in excess of $200,000. Unless otherwise discharged after his death, those partnership debts were paid in 1974 from crop income and collections of accounts receivable of the farming business.[10] Payment of the partnership debts relieved the estate of liability for them. Ernest's and petitioner's one-half shares of the partnership interests remained in the partnership subject to creditors' claims after December 31, 1973.[11] Indeed, the 1974 return filed by the estate shows that the estate treated as its own one-half of the collections and the crop income. Accordingly, it is clear that Ernest's estate continued to share in the profits of the partnership business and that the partnership, within the meaning of section 708(a) and (b)(1), did not terminate until after Ernest's death. Sec. 1.708–1(b)(1)(i)(*a*), Income Tax Regs.

Conceding that the farming business was continued after Ernest's death, petitioner would distinguish cases addressing the

---

[8]Sec. 1.708–1(b)(1)(i)(*a*), Income Tax Regs., provides as follows:

"Upon the death of one partner in a 2-member partnership, the partnership shall not be considered as terminated if the estate or other successor in interest of the deceased partner continues to share in the profits or losses of the partnership business."

[9]In *Glassell v. Prentiss*, 175 Cal. App. 2d 599, 346 P.2d 895, 901 (4th Dist. Ct. App. 1959), the court explained:

"In settling accounts between partners after dissolution, the liabilities of the partnership to creditors first must be paid; secondly, the liabilities owing to partners other than for capital and profits, and thereafter the liabilities owing to partners in respect to capital and profits. * * * If there is not sufficient partnership property to satisfy the liabilities, each partner must contribute his share towards such satisfaction, and any partner who contributes more than his share may recover from a defaulting partner the amount which was paid in excess of his liability. * * *"

See also Cal. Corp. Code sec. 15036(4) (West 1977).

[10]The second report of petitioner, as executrix, filed in the Superior Court, as well as the Court's order approving her report, shows that only one creditor's claim was filed against the estate as such—a claim by petitioner herself in the amount of $4,182.45. The partnership's debts thus were not treated as debts of the estate. Nor is there any evidence in that report or any of the other Superior Court documents in evidence indicating that the proceeds of the partnership crops were controlled by, or even reported to, the court.

[11]One commentator has opined that the estate shares in partnership profits or losses if the decedent's capital interest remains in the partnership subject to the claims of partnership creditors. W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, par. 12.04[2], n. 34 (1977).

issue whether post-dissolution activities were sufficient to constitute continuation of a partnership under section 708. *Baker Commodities, Inc. v. Commissioner*, 415 F.2d 519 (9th Cir. 1969), affg. 48 T.C. 374 (1967), cert. denied 397 U.S. 988 (1970); *Foxman v. Commissioner*, 41 T.C. 535 (1964), affd. 352 F.2d 466 (3d Cir. 1965); *Ginsberg v. United States*, 184 Ct. Cl. 444, 396 F.2d 983 (1968). While the post-December 31, 1973, business activities in the instant case were extensive, our conclusion that the two-member partnership did not terminate for Federal tax purposes is based not on the extent of activity conducted, but on the facts that the partnership was not wound up at Ernest's death and the estate continued to share in the partnership profits or losses. Therefore, we do not discuss petitioner's attempts to distinguish other cases to which section 1.708–1(b)(1)(i)(*a*), Income Tax Regs., does not apply. *Evans v. Commissioner, supra*; *Maxcy v. Commissioner*, 59 T.C. 716 (1973); *Estate of Panero v. Commissioner*, 48 T.C. 147 (1967).[12]

Petitioner has cited no provision of the Internal Revenue Code, and we know of none, which would characterize the partnership assets as property qualifying for the section 1014(a) and (b)(6) basis adjustment, i.e., property acquired from a decedent or property in the hands of a person to whom it passed from a decedent. To the contrary, subchapter K of chapter 1 of the Code expressly contemplates a situation in which the basis of a partnership interest is adjusted under section 1014 while the bases of firm assets are unchanged. Section 743(a) provides that:

> The basis of partnership property shall not be adjusted as the result of a transfer of an interest in a partnership * * * on the death of a partner unless the election provided by section 754 (relating to optional adjustment to basis of partnership property) is in effect with respect to such partnership.

*Estate of Dupree v. United States*, 391 F.2d 753, 758 (5th Cir. 1968). Thus, only after filing a timely section 754 election may the firm adjust the bases of partnership assets under section 743(b)[13] with respect to the transferee partner. Courts have

---

[12]The deemed distribution of partnership property, described in sec. 1.708–1(b)(1)(iv), Income Tax Regs., does not apply in the instant case. Such a deemed distribution applies "if a partnership is terminated by a sale or exchange of an interest." A disposition of a partnership interest by bequest or inheritance is not a sale or exchange of an interest, within the meaning of the regulation. Sec. 1.708–1(b)(1)(ii), Income Tax Regs.

[13]SEC. 743. OPTIONAL ADJUSTMENT TO BASIS OF PARTNERSHIP PROPERTY.

(b) ADJUSTMENT TO BASIS OF PARTNERSHIP PROPERTY. —In the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner, a partnership with respect

recognized that under these Code sections, in the absence of a valid election, the transferee of a partnership interest may have a basis for that interest far larger than his ratable share of the adjusted basis of partnership property. *Estate of Dupree v. United States,* 391 F.2d at 758; *Jones v. United States,* 213 Ct. Cl. 529, 532 and n. 3, 553 F.2d 667, 668 (1977).

As we understand her argument, petitioner links together several Federal income tax and State law provisions to support her theory that the bases of partnership assets were adjusted at Ernest's death. She first argues that the partnership was terminated on December 31, 1973. We have pointed out that Ernest's estate continued to share in the profits of the partnership and that it did not, therefore, terminate for Federal tax purposes. Citing article 8 of the partnership agreement, which provides that "the partnership shall terminate upon the death of either partner," however, petitioner argues that the partnership terminated at Ernest's death. Yet article 10 of the agreement, set out above, provides that the estate of a deceased partner is entitled to determine whether the partnership will, if it has not already done so, elect under section 754 to adjust the bases of partnership property. Implicit in this provision is an assumption that the partnership would continue for some period of time after the death of one of the two partners.

As we construe the agreement as a whole, the word "terminate" as used in article 8 denotes not an immediate termination within the meaning of either California partnership law or subchapter K but rather a dissolution to be followed in due course by a winding up of partnership affairs. A dissolution is not synonymous with a termination. Rather a dissolved partnership "continues until the winding up of partnership affairs is

---

to which the election provided in section 754 is in effect shall—

(1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, or

(2) decrease the adjusted basis of the partnership property by the excess of the transferee partner's proportionate share of the adjusted basis of the partnership property over the basis of his interest in the partnership.

Under regulations prescribed by the Secretary or his delegate, such increase or decrease shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. * * *

completed." Cal. Corp. Code secs. 15030, 15031(4) (West 1977).[14] *Yahr-Donen Corp. v. Crocker*, 80 Cal. App. 2d 778, 182 P.2d 209, 211 (2d Dist. Ct. App. 1947). Winding up involves payment of partnership liabilities and settling of accounts between the partners. Cal. Corp. Code secs. 15038, 15040, 15041 (West 1977); *Comstock v. Fiorello*, 260 Cal. App. 2d 262, 67 Cal. Rptr. 104, 106 (4th Dist. Ct. App. 1968); *Glassell v. Prentiss*, 175 Cal. App. 2d 599, 346 P.2d 895, 901 (4th Dist. Ct. App. 1959).

As stated above, the partnership had on hand accounts receivable, harvested crops, and growing crops as well as other assets and had large amounts of indebtedness outstanding on December 31, 1973, when Ernest died. The crops were not all sold for several months, and the liabilities were not fully discharged until September 1974. Hence, the partnership was dissolved but was not terminated at Ernest's death.

Since the winding up of the partnership was not completed at Ernest's death, the partnership did not then terminate even if, as petitioner contends, her conduct of the farming business after December 31, 1973, exceeded the authority of a surviving partner to wind up partnership affairs. As petitioner acknowledges, the partnership is bound even on transactions undertaken by a surviving partner in excess of the authority conferred by Cal. Corp. Code secs. 15033 and 15035(1) (West 1977) if the other party to the transaction knew of the partnership prior to dissolution, had no knowledge or notice of the dissolution, and, in the case of one who was not a prior partnership creditor, the fact of dissolution had not been advertised in a newspaper in accordance with Cal. Corp. Code secs. 15035(1)(b)(II) and 15035.5 (West 1977).

The record does not reveal (i.e., petitioner has not carried the burden of proving) who are the other parties to those transactions which petitioner describes as outside the scope of winding up the partnership, whether those parties knew of the partnership prior to dissolution, or whether they had notice or knowl-

---

[14]Sec. 15030. Effect of dissolution

On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.

Sec. 15031. Causes of dissolution

Dissolution is caused:

(4) By the death of any partner unless otherwise provided in an agreement in writing signed by all the partners before such death;

edge of dissolution. However, the parties have stipulated that no notice of dissolution was published. In fact, as the parties have stipulated, the name "Santa Rita Ranch Co." was used in continuing the business "in a conscious effort to create an impression of continuity with third parties." All bank accounts maintained by the partnership before December 31, 1973, were kept in the name of Santa Rita Ranch Co. Checks on those accounts bore no notation that the accounts had become those of Ernest's estate. We cannot, therefore, conclude that the partnership was not bound by these transactions under California law.

Petitioner further cites Cal. Prob. Code sec. 202 (West 1956),[15] and Cal. Civ. Code sec. 5125 (West 1970),[16] which, as in effect in 1973, subjected both the husband's and the wife's shares of community personal property, including partnership interests, to probate administration upon the husband's death. Petitioner states that she applied for and was granted permission by the Superior Court to continue the farming business in her capacity as executrix of the estate. The Superior Court, she argues, treated the partnership as terminated and its assets as community property administered in the estate. On this theory, petitioner concludes that the farming business became part of the estate and was carried on in Ernest's estate and by his executrix rather than in the partnership and by a partner for State law purposes. Noting that Federal income tax law determines the existence and termination of a partnership but that local law governs in determining the legal relationships of partners and their interests in partnership assets (sec. 301.7701–1(c), Proced. & Admin. Regs.), she maintains that the partnership is, therefore, considered as terminated under section 708(b)(1)(A), quoted in note 7 *supra*, for Federal tax purposes as well.

We agree with petitioner that both her and Ernest's partnership interests were subject to probate administration in Ernest's estate. By stating that the executrix controls the assets in the estate subject to court jurisdiction, however, she misconstrues

---

[15]Cal. Prob. Code sec. 202 (West 1956) provided in part that:

"Community property passing from the control of the husband * * * by reason of his death * * * is subject * * * to administration and disposal under the provisions of Division 3 [Administration of Estates of Decedents] of this code * * *"

[16]Cal. Civ. Code sec. 5125 (West 1970) provided in part that:

"the husband has the management and control of the community personal property * * *"

both Cal. Prob. Code sec. 300 (West 1956), and the cases on which she relies. Under these authorities, the executrix, as an officer of the court, merely has possession; the Superior Court controls the assets. *In re Estate of Cole*, 240 Cal. App. 2d 324, 49 Cal. Rptr. 419, 423 (1st Dist. Ct. App. 1966); *In re Algee's Estate*, 158 Cal. App. 2d 691, 323 P.2d 221, 226 (2d Dist. Ct. App. 1958). Though administered in the probate court, petitioner's half interest in the partnership never became a part of Ernest's estate.[17] Subjecting the partnership interests to probate administration, moreover, did not effectuate a liquidation of the partnership and the winding up of its affairs. That remained to be done.

We do not agree with petitioner's further argument that she is taxable on one-half the income from the farming business not "as a partner in a continuing partnership" but as the surviving spouse whose one-half interest in the community property was subject to probate administration in Ernest's estate. *Bishop v. Commissioner*, 152 F.2d 389, 390 (9th Cir. 1945), revg. and remanding 4 T.C. 588 (1945), cited by petitioner, does not support that position. Construing California law, the *Bishop* court held that the taxpayer's one-half share of community property, although subject to probate administration in her husband's estate, belonged to her after, as well as before, her husband's death. Therefore, income attributable to that share was taxable to her. *Bishop v. Commissioner*, *supra* at 390–391. Our conclusions that petitioner remained the owner of her partnership interest until the affairs of the partnership were wound up and that the partnership continued after December 31, 1973, for State law as well as Federal tax purposes are consistent with that case.

Moreover, the fact that petitioner applied for and was granted authority from the Superior Court to operate the farming business does not, as she maintains, mean that she had no authority under California law to operate the partnership as surviving partner. As our discussion above indicates, she was able to bind the partnership on the transactions she undertook

---

[17]In *Bishop v. Commissioner*, 152 F.2d 389, 391 (9th Cir. 1945), revg. and remanding 4 T.C. 588 (1945), the court explained:

"The Tax Court appears to have assumed that, upon decedent's death, petitioner's half of the community property ceased to be hers and became a part of decedent's estate. The assumption is incorrect. Petitioner's half, like decedent's half, was subject to administration, but, unlike his half, her half never became a part of his estate. [Fn. refs. omitted.]"

after December 31, 1973. California partnership law expressly provides (Cal. Corp. Code. sec. 15045 (West 1977)):

The rights and duties of surviving partners, the legal representatives of deceased partners, the creditors of such partners, and the creditors of the partnership * * * shall be given full force and effect notwithstanding any provision inconsistent therewith in the Probate Code * * *

Therefore, we cannot, as petitioner would have us, conclude that, under State law, the farming business was operated in the estate by the executrix rather than in a partnership by a partner.

It is true, as petitioner observes, that the Superior Court stated in its order dated March 15, 1974, that the partnership terminated upon Ernest's death, and that the partnership assets, as community property of decedent and petitioner, became subject to the jurisdiction of that court as a part of the community property estate. However, the Superior Court made that statement not in adjudicating whether the partnership terminated under State law or whether the bases of its assets were adjusted for Federal tax purposes but rather in the course of administering Ernest's estate. There is nothing in the record to indicate that this issue was litigated in the Superior Court. The Superior Court's statement is to be weighed in the light of the facts that, as of December 31, 1973, the affairs of the partnership had not been wound up, that its debts were paid during 1974 from its farm crop proceeds, and that the estate and petitioner individually were thereby relieved of debts which would otherwise have fallen on the estate and petitioner. Sec. 1.708–1(b)(1)(i)(a), Income Tax Regs. And, indeed, the partnership debts were not treated by that court as debts of the estate but rather were handled apart from the estate. The Superior Court's statement thus is not dispositive of the issue before us.

## 2. Section 754 Election

If the bases of the partnership assets were not adjusted at Ernest's death under section 1014, petitioner acknowledges that the bases reported in the 1974 returns filed by her and by the estate were correct only if an election under section 754 was made. Although filed in neither the time period nor the manner prescribed by section 1.754–1, Income Tax Regs., a valid election was, in her view, filed in the petition in this case. Respondent, on the other hand, maintains that the purported election, which was

neither timely nor made by the partnership, fails two requirements of the regulation. We hold that the purported election was not valid because it was not filed by the partnership in a timely partnership return as required by section 1.754–1(b)(1), Income Tax Regs.

In the case of a transfer of a partnership interest, the basis of partnership property is adjusted with respect to the transferee if the partnership files an election "in accordance with regulations prescribed by the Secretary." Sec. 754.[18] In the instant case, the partnership did not file an election. Moreover, under the regulations, such an election "shall be made in a written statement filed with the partnership return for the taxable year during which the * * * transfer occurs." Sec. 1.754–1(b)(1), Income Tax Regs.[19]

This regulation has been upheld as not unreasonable or plainly inconsistent with the revenue statutes. *Jones v. United States*, 213 Ct. Cl. 529, 537, 553 F.2d 667, 671 (1977). In that opinion, the Court of Claims noted that a proposed version of section 743 contained the requirement that the election be filed with the partnership return for the year of the transfer, the same requirement embodied in the regulation under section 754 (213 Ct. Cl. at 536, 553 F.2d at 671). Construing the regulation, the court held that the election must be timely made with the original return for the year of the transfer or in an amended return filed within the statutory period for filing the original return. *Jones v. United States*, 213 Ct. Cl. at 539, 553 F.2d at 672.

---

[18]SEC. 754. MANNER OF ELECTING OPTIONAL ADJUSTMENT TO BASIS OF PARTNERSHIP PROPERTY.

If a partnership files an election, in accordance with regulations prescribed by the Secretary or his delegate, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in section 734 and, in the case of a transfer of a partnership interest, in the manner provided in section 743. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and all subsequent taxable years. Such election may be revoked by the partnership, subject to such limitations as may be provided by regulations prescribed by the Secretary or his delegate.

[19]Sec. 1.754–1 Time and manner of making election to adjust basis of partnership property.

(b) *Time and method of making election.* (1) An election under section 754 and this section to adjust the basis of partnership property under sections 734(b) and 743(b), with respect to a distribution of property to a partner or a transfer of an interest in a partnership, shall be made in a written statement filed with the partnership return for the taxable year during which the distribution or transfer occurs. For the election to be valid, the return must be filed not later than the time prescribed by paragraph (e) of sec. 1.6031–1 (including extensions thereof) for filing the return for such taxable year (or before August 23, 1956, whichever is later). * * *

Accord, *Estate of Dupree v. United States*, 391 F.2d 753, 759 (5th Cir. 1968) (without reaching issue whether election must be filed only with return for the year of the transfer, the court cited same time period with respect to return with which purported election was filed). A similar regulation has been upheld under another Code section. *National Western Life Insurance Co. v. Commissioner*, 54 T.C. 33, 40 (1970) (sec. 1.818–4(e), Income Tax Regs.).

Here, the transfer occurred at Ernest's death. No election was filed with the partnership return for 1973. The purported election was filed as part of the petition in this proceeding on June 16, 1978, more than 4 years after the period for filing the 1973 partnership return and thus even later than the purported election in *Jones.*

Petitioner does not, as did the taxpayer in the *Jones* case, contend that the time period prescribed by the regulation allowed insufficient time to decide whether to elect under section 754. The Court of Claims rebutted the argument in that case, in part, by noting that no extension of time to file the partnership return or the election was ever requested. Similarly, neither the partnership nor petitioner in the instant case ever requested an extension of time to file the return or the election.

According to petitioner, a line of installment method election cases (*Mamula v. Commissioner*, 346 F.2d 1016 (9th Cir. 1965), revg. and remanding 41 T.C. 572 (1964); *Scales v. Commissioner*, 211 F.2d 133 (6th Cir. 1954), revg. and remanding 18 T.C. 1263 (1952); *Bayley v. Commissioner*, 35 T.C. 288 (1960); *Estate of Broadhead v. Commissioner*, T.C. Memo. 1972–195), holds that a late election is valid if the taxpayer reasonably relied on a characterization of the transaction which would not entail an election and if the election later became necessary for the first time after determination of deficiencies. Returning to her arguments with respect to the first issue in this case, petitioner characterizes the failure to elect as reasonable and maintains that the election became necessary only when respondent determined that the bases of partnership assets were not adjusted at Ernest's death.

We do not agree that these cases stand for the foregoing broad proposition. They are all distinguishable from the case before us. The taxpayer in *Mamula* originally reported gain on the sale of real estate on the basis of an accounting method *not*

allowed by the regulations under section 453(b). Permitting the taxpayer to belatedly elect the installment method, the Ninth Circuit stated that a late election could be made if the original election was invalid. Furthermore, it deemed the regulation under section 453 inapplicable to the case before it. Here the initial failure to elect under section 754 was not invalid as the basis adjustment is optional.

In *Bayley* and *Estate of Broadhead*, this Court relied in part on the Commissioner's published position in Rev. Rul. 56–396, 1956–2 C.B. 298, and Rev. Rul. 65–297, 1965–2 C.B. 152, respectively, that a taxpayer could elect installment method treatment even if he failed to comply with section 1.453–8(b)(1), Income Tax Regs. No such concession applies to the instant case. In *Scales*, the Sixth Circuit cited its opinion in *United States v. Eversman*, 133 F.2d 261, 266 (6th Cir. 1943), which held that section 44(b) and (d), the relevant Code provision, contained no requirement that an express election be made in the tax return. As this Court has observed, neither did the regulations applicable in *Scales* and *Eversman* require an election in the income tax return. *Reaver v. Commissioner*, 42 T.C. 72, 78–80 (1964). In contrast, the regulations under section 754 contain such a requirement.

Summarizing, section 754 authorizes the coveted basis adjustment only if the "partnership files an election" and only if the election is filed "in accordance with regulations prescribed by the Secretary or his delegate." The partnership did not file an election in this case. The only purported election was that filed by petitioner on June 16, 1978, in the petition herein. By that time, indeed by not later than February 26, 1975, the partnership had ceased to exist: its assets had been sold or transferred to Santa Rita Farms, Inc.; its debts had been paid; and the assets of Ernest's estate had been distributed. Moreover, the election was not made in a written statement filed with a timely return for the partnership for the taxable year during which the distribution or transfer occurred as required by the regulation. We are compelled, therefore, to hold that a valid basis adjustment election was not made pursuant to section 754.

To reflect the foregoing,

*Decision will be entered for the respondent.*